Matthias, J.
 

 The appellant complains first of the action of the trial court in rejecting its motion for a directed verdict and its subsequent motion for judgment notwithstanding the verdict.
 

 The record presents no substantial controversy as to the facts. It is the contention of the appellant that they show no negligence on its part in any respect or any failure in the performance of any duty which could have been the proximate cause of the injury complained of; that if there were any hazardous conditions on its premises they were open and obvious and the risk thereof was assumed by the plaintiff; and that the plaintiff was guilty of contributory negligence.
 

 For convenience, the parties will be hereinafter referred to as plaintiff and defendant.
 

 There is no justifiable controversy as to the relationship of the plaintiff and'the defendant, nor should there be as to the duty of the latter to the former arising out of such relationship. Concededly the plaintiff, at the time of his injury, was on the premises of the defendant as an employee of a. contractor then engaged in the erection of a building for the defendant. He was, therefore, an invitee of the defendant who accordingly owed him the duty “to exercise ordinal^ care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation. ’ ’
 

 The owner has the further duty of exercising reasonable care to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee. Such duty, however,
 
 *543
 
 lias reference only to the owner’s plant and premises, and not to the contractor’s equipment. 2 Shearman
 
 &
 
 Redfield on Negligence (Rev. Ed.), 688, Section 279; 38 American Jurisprudence, 754, Section 96; Prosser on Torts, 635; 29 Ohio Jurisprudence, 465, Section 61.
 

 Numerous cases are cited by these authorities, supporting the general proposition above stated.
 

 2 Shearman & Redfield on Negligence (Rev. Ed.), 688, Section 279, states the rule thus:
 

 “ ‘An occupant of land owes to the servants of an independent contractor, employed to do work thereon, the duty of exercising ordinary care to render the premises reasonably safe for the performance of the work.’ But the common-law duty to furnish a safe place to work, even as extended by statute to include the tools and appliances without which the place io work would be incomplete for the purpose intended, refers to the owner’s plant and not to the contractor’s equipment. * * * The law requiring an owner to keep the place reasonably safe for a contractor and his subcontractors does not apply where the work itself is of an unsafe nature or the defects are due to the imperfect and negligent work of the contractor himself.”
 

 Hozian, an Infant,
 
 v.
 
 Crucible Steel Casting Co.,
 
 132 Ohio St., 453, 9 N. E. (2d), 143, 112 A. L. R., 333, and cases cited are also in point. See, also,
 
 Davis
 
 v.
 
 Charles Shutrump & Sons Co.,
 
 140 Ohio St., 89, 42 N. E. (2d), 663.
 

 The general rule applicable is concisely stated in the syllabus of the latter case and is supported by many decided cases. It is as follows:
 

 “Where the premises upon which construction work is to be performed by a contractor remains under the control of the principal employer while the work is in the course of performance, a servant of the contractor is an invitee and as such entitled to recover from the
 
 *544
 
 principal employer for any injury which he may sustain by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition.”
 

 The specific charge upon which the claim of liability of the defendant is based is that it maintained a hazardous condition on its premises and failed to warn the plaintiff thereof. This hazardous condition, if it was such, was not the result of any improper or faulty construction of the power line, and there was no claim of a defective condition of poles, wires or crossarms. The complaint is of the hazardous condition created by the transmission of electric current of high voltage in dangerous proximity to the place where plaintiff was required to work on defendant’s premises, and the failure to give notice of such condition or warning of the existing or potential hazard thereby created.
 

 That a hazardous condition existed, or that a situation was created and maintained on the defendant’s premises which became hazardous by and through the operation of the equipment used by the contractor in the erection of defendant’s building, seems scarcely open to question. The injuries suffered by the plaintiff resulted from the maintenance of the high tension line, carrying a voltage of more than 22,000 and' in proximity to the building upon which the plaintiff was employed, while the work of erecting the structure continued, together with the operation of the contract- or’s crane. The use of the crane in the movement of the structural steel was essential in the erection of the building, and the fact of its use and the manner of operation were known by the defendant prior to and at the time plaintiff was injured.
 

 The record discloses that the pieces of structural steel being used in the erection of defendant’s building-had been unloaded from cars and piled inside the main
 
 *545
 
 building where the plaintiff and a fellow employee, with the help of a big mill crane which ran up and down on the tracks, sorted the pieces, and other employees pulled them outside with a truck crane.
 

 It is disclosed by the evidence, also, that, prior to Friday, the day of the accident, the truck crane had not been at any time on the north side of the building; that theretofore it had been operated in the building; and that on Thursday employees of the defendant company made an excavation in the center of the building-preparatory to the installation of machinery therein. It appears that prior to such excavation the crane was operated to distribute and raise the structural steel inside the building, but after the excavation was made, movement of the steel by use of the crane inside the building became impossible. .There is evidence indicating that it was this change of condition inside the building which made subsequent operation of the crane outside the building necessary; that this necessity and the reason therefor were known by the defendant; and that the chief engineer of the defendant, who had supervision of all departments of the plant, was present and saw the truck crane when-it started to back up toward the power line immediately preceding- plaintiff’s injury. In this connection it should be observed that the premises of the defendant remained under its control, and that it actively participated in the operations incident to and in connection with the erection of its building.
 

 The plaintiff was a structural steel worker. His place of work in the erection of the building in question was upon the steel framework as it was assembled and put in place, and his task was to assist in getting the parts in proper position and bolting them together.
 

 On the day of the accident the foreman of the contractor sought to move some of these pieces of steel called purlins. To accomplish this purpose a wire ca
 
 *546
 
 ble was placed around six of these steel purlins, which were about 22 feet in length. By the operation of the motor of the truck they were raised and suspended about 3.5 feet above the ground. At that time plaintiff was called from his place of work on the steel structure by the foreman of the contractor, who directed him to assist two fellow employees to steady these steel purlins while they were being moved by the truck crane. The truck crane was then headed south, the direction opposite the power lines, and plaintiff took a position facing the south; that is, the same direction as the truck crane. Under the direction of the foreman, the truck crane was then backed in a northerly direction toward the north side of the bailer building, which was toward the high tension lines. As the truck backed, the plaintiff moved backward, holding onto the steel purlins. The boom'of the crane was then nearly vertical. This steel boom was 25 feet' in length and was mounted on the truck 4 feet and 9 inches above the ground. It was equipped with
 
 steel
 
 cables for lifting purposes. As the truck crane was being backed, this steel boom came in contact with the high tension wire, about a foot from the end of the boom. There was some evidence that prior to the contact a fellow employee of the plaintiff placed a plank under one' of the wheels of the truck crane which, it is claimed, caused the boom to swerve into the electric wire. The effect of such act is a fact in controversy which was properly submitted to the jury.
 

 It does not appear that the plaintiff had been upon the premises of the defendant prior to Tuesday, when he began work. He worked Wednesday. He and other employees returned Thursday, but, by reason of windy conditions, work for that day was abandoned. It therefore appears that he had been on the premises only three days prior to the day of his injury. Plaintiff testified that upon all occasions he had approached and
 
 *547
 
 left Ms place of work through the main building of the defendant, and that be bad not at any time seen the power line prior to the accident and did not know of its existence. The record discloses that no notice had been given plaintiff of the existence of the power line and there were no warning or cautionary signs except at a transformer station located about 200 feet east of the bailer building. There is no evidence that plaintiff had seen or knew anything about this. His testimony is that he did not.
 

 In our opinion it was the duty of the trial court to submit the questions of negligence and contributory negligence to the jury with proper instructions, and, therefore, the trial court did not commit error in overruling the motion of the defendant for a directed verdict or the motion for judgment notwithstanding the verdict.
 

 We then have the question as to whether any prejudicial error was committed by the trial court in the respects contended by counsel for the defendant as to admission or rejection of evidence, or in the court’s instructions to the jury.
 

 The court, over the objection of the defendant, permitted a witness qualifying as a professional electrical and mechanical engineer, and a witness qualifying as a consulting engineer and general contractor, to testify as to the general custom with reference to safety regulations in a situation such as' existed in the instant case for the protection of persons engaged in structural steel work of constructing that building.
 

 Preceding the question of such import to each witness, a detailed description of the building, the power line, together with the various dimensions and distances involved, and the truck crane in question, was recited by counsel for the plaintiff. In response to such question, each witness undertook to state the precautions essential to conform to the general custom and
 
 *548
 
 practice' in building operations under tbe conditions described.
 

 We are of tbe opinion that tbe introduction of this evidence was erroneous. It has been definitely decided by this court that a special custom or usage in any particular trade, business or profession, to be available to either party, must be specially pleaded.
 
 Palmer
 
 v.
 
 Humiston, 87
 
 Ohio St., 401, 101 N. E., 283, 45 L. R. A. (N. S.), 640;
 
 Ault
 
 v.
 
 Hall,
 
 119 Ohio St., 422, 164 N. E. 518, 60 A. L. R., 128.
 

 To be controlling upon or effective in appraising the conduct of the defendant, evidence of custom and usage must relate to the particular trade, business or profession in which the defendant was engaged, unless it be shown that the defendant had knowledge of such custom or usage. 1 Hanna on Ohio Trial Evidence, 367, Section 435. The trade or business of the defendant was neither the erection and maintenance of high tension lines nor the erection of steel structures.
 

 The introduction of this evidence was prejudicial to the defendant, particularly in view of the fact that the court clearly indicated in the charge that if the jury deemed the testimony of the two witnesses credible, it should accept the custom and usage testified to by them as the establishment of a standard of safety with which the defendant should comply in order to meet the duty devolving upon it. See 2 Wigmore on Evidence (3 Ed.), 488, Section 461.
 

 The charge of the court is vulnerable to the criticism that it seemingly placed upon the defendant the absolute duty to furnish a safe place to work. In the course of the general charge, following its statement that “there is a duty established by the statutes of Ohio, that is the enactments of the General Assembly relating to the safety of employees and workmen,” the court read to the jury the first five subsections of Section 871-13, General Code, which define “place of
 
 *549
 
 employment,” “employment,” “employer,” “employee” and “frequenter,” and then read Sections 871-15 and 871-16, General Code, which are as follows:
 

 Section 871-15. “Every employer shall furnish employment which shall be safe for the. employees therein, and shall furnish a place of employment which shall be safe' for the employees therein, and for frequenters thereof, and shall furnish and usé safety devices and safeguards, and shall adopt and use methods and processes, follow and obey orders and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters. ’ ’
 

 Section 871-16. “No employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees or. frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe.”
 

 Sections' 871-13, 871-15 and 871-16, General Code, are parts of the same act and should be considered and construed together. Standing alone, the provisions of Sections 871-15 and 871-16, General Code, read to the jury, require the furnishing of “employment which shall be safe” and “a place of employment which shall be safe” and prohibits the construction, occupancy or maintenance of ‘ ‘ any place of employment that is not
 
 *550
 
 safe.” A positive and absolute requirement and a positive and absolute prohibition are thus stated.
 

 The court then said to the jury:
 

 “Now, it is for you to say whether or not this defendant company exercised reasonable care in compliance with these provisions of law.”
 

 The court, after quoting in full the provisions prescribing general rules of conduct, failed to call attention to the provisions of the statute essential to a correct consideration and application of the provisions read, and without which the instructions given were prejudicially erroneous.
 

 Subsection 11 of Section 871-13, General Code, provides as follows:
 

 “The terms ‘safe,’ and ‘safety,’ as applied to any employment or a place of employment shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters as the nature of the employment will reasonably permit * *
 

 It is obvious that the words “safe” and “safety,” as thus defined, have a much more restricted meaning. than would ordinarily be accredited them. These provisions, .when considered and construed together, do not create an absolute duty or unconditional liability or constitute the employer an insurer. The provisions which are explanatory of the standards of conduct prescribed by the other provisions of the same act should not have been omitted but should have been included in the charge. See
 
 Kuhn
 
 v.
 
 Cincinnati Traction Co.,
 
 109 Ohio St., 263, 142 N. E., 370.
 

 The charge of the court in other respects was complete and commendable, and the correct rule as to conduct and liability was stated elsewhere in the general charge. However, it is well settled in this state that where the trial court in one part of the instructions stated a correct principle of law and in another part with reference to the same subject matter stated an
 
 *551
 
 incorrect rule, or in different parts of its charge stated rules and principles contradictory of or inconsistent with each other, or gave more than one rule for determining the rights of a party, it cannot be presumed that the jurors were able to determine which of the conflicting declarations of the law by the court was the correct one, or the one that they should have followed, or that they ignored or disregarded the erroneous instructions given, and selected and applied the correct rule. 39- Ohio Jurisprudence, 929, Section 254;
 
 Montanari
 
 v.
 
 Haworth,
 
 108 Ohio St., 8, 140 N. E., 319;
 
 Marcoguiseppe
 
 v.
 
 State,
 
 114 Ohio St., 299, 151 N. E., 182; and
 
 Industrial Commission
 
 v.
 
 Ripke,
 
 129 Ohio St., 649, 196 N. E., 640.
 

 In accordance with the views herein expressed, the judgment of the Court of Appeals is reversed and the cause is remanded for retrial.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Zimmerman, Bell, Williams, Turner and Hart, JJ., concur.