**FORD MOTOR COMPANY,**
Appellant,

v.

**Wallace H. TOMLINSON, Appellee.**

**No. 12322.**

United States Court of Appeals
Sixth Circuit.

Feb. 11, 1956.

James A. Butler, Cleveland, Ohio, Bulkley, Butler & Rini, Cleveland, Ohio, on brief, for appellant.

Theodore T. Sindell, Cleveland, Ohio, Julien Renswick, Sindell, Sindell, Renswick & Bourne, Cleveland, Ohio, on brief, for appellee.

Before ALLEN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

In this diversity of citizenship case Wallace H. Tomlinson was awarded damages by a district court jury for personal injuries he sustained while working as a painter in a plant under construction on the defendant Ford Motor Company's property near Cleveland, Ohio.[1] The plaintiff was an employee of an independent painting contractor at the time he was injured. Even if all factual issues are resolved in favor of the plaintiff, the defendant contends it is not liable for his injuries under the law of Ohio, and that the district judge was in error in submitting the case to the jury.

Ford was the owner of land on Brook Park Road near Cleveland, upon which it undertook to have a new engine plant constructed. For this purpose it let a number of prime contracts for various phases of the work. There was no general contractor, as such. Ford itself performed many of the traditional functions of a general contractor, reserving in its prime contracts the power to co-ordinate, schedule and approve work in progress. The H. K. Ferguson Company was the prime contractor for the erection of the superstructure. That company in turn let some twenty subcontracts to other independent contractors, among them a subcontract with Automatic Sprinkler Corporation of America to install an overhead sprinkler system and another subcontract with Jennison-Wright Corporation to lay wood block flooring. Automatic Sprinkler in turn subcontracted with Long Painting Company to paint the sprinkler system. The plaintiff was in Long's employ on August 6, 1951, when he was injured.

On that day the plaintiff and another Long painter, standing on a scaffold sixteen feet above the floor, were engaged in painting the sprinkler pipes. It was their second day on the job. The scaffold rested on trusses and cables which had been erected as part of the structural steel work, and ropes were tied to each end of the scaffold to enable it to be pulled into new positions as the painting progressed. These ropes were coiled up at each end of the scaffold, leaving a loop between the coil and the point where the rope was tied to the scaffold at each end, each loop extending downwardly a distance of some three to five feet.

While this painting work was in progress overhead, the employees of Jennison-Wright were installing wood block flooring in the same area of the plant. The wood blocks were brought to the place where they were needed in the plant area by a dump truck. This truck was operated and owned by Alfonso Ruffin, who had been hired by Jennison-Wright on an hourly basis. As the work progressed, Ruffin was told by the Jennison-Wright employees where to dump each load of wood blocks.

While the plaintiff and his fellow worker were thus engaged in painting the sprinkler pipes above, Ruffin's dump truck was, at the direction of the Jennison-Wright employees, spotted in a position not far from a point directly below one end of their scaffold. In order to unload the wood blocks, Ruffin raised the dump body to its maximum height of nearly thirteen feet above floor level and moved the truck forward quickly. The truck's elevated body snagged the loop of rope hanging from the end of the scaffold, pulled the scaffold down and caused the plaintiff to fall to the floor.

No Ford employee and no equipment or vehicle belonging to Ford were directly involved in the immediate sequence of events leading to the plaintiff's injuries.

1. The parties will be denominated as in the court below, and the defendant Ford Motor Company will sometimes hereinafter be referred to as "Ford."

There was evidence, however, that Ford plant guards were present in the general area, and that some Ford property had already been moved into the plant for installation or storage not far from the site of the plaintiff's injuries. While the evidence was in conflict as to who had arranged for the sprinkler painting and floor laying operations to proceed simultaneously in the same area of the plant, there was sufficient evidence to support a finding that it was Ford which had done so under the powers reserved to it in its prime contract with Ferguson.

The undisputed evidence showed that Long's general foreman had been present when the painting job was commenced on the previous day and had observed the floor work in progress in the same area of the plant where the painting work was to be done. The foreman observed that the work of laying the floor was proceeding from a northerly to a southerly direction, and he ordered the plaintiff and his co-worker to work from a southerly to a northerly direction in painting the overhead sprinkler system. The foreman gave no warning to the plaintiff or his fellow worker of any danger involved in the simultaneous carrying on of the painting and the floor laying in the same area of the plant. The plaintiff himself knew the floor laying work was going on, and had noticed a dump truck at least once during the day and a half he had been on the job before the accident, but the dump body of the truck was not elevated at the time he observed it.

This action for damages was originally filed by the plaintiff against Alfonso Ruffin, Jennison-Wright Corporation and Ford. The complaint charged Ruffin with negligent operation of his dump truck and Jennison-Wright with negligence in allowing the wood blocks to be unloaded in a manner that it should have foreseen was dangerous to the plaintiff painting overhead. Ford was charged with negligence in failing to provide a safe place of employment and in failing to warn those working at floor level of the work going on overhead or to take steps to avoid the simultaneous progress of the overhead painting and the floor laying in the same area of the plant.

After the trial had proceeded for two weeks, the plaintiff entered into an agreement with Jennison-Wright and Ruffin to dismiss the case as to them, the plaintiff covenanting to cease and desist from further suing those defendants in return for a total payment of $13,500 made by them, but reserving all his rights against Ford. After overruling Ford's motion for judgment in its favor, the trial judge submitted the case to the jury, which returned a verdict of $13,500 against Ford, upon which judgment was entered. Subsequently Ford's motion for judgment notwithstanding the verdict or in the alternative for a new trial was overruled by the district court in a memorandum order.

In submitting the case to the jury, the trial judge instructed them that it was Ford's duty to comply with Sections 4101.11 and 4101.12 of the Ohio Revised Code. Those sections, which were read to the jury, provide as follows:

"4101.11. Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

"4101.12. No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes rea-

sonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

■ The trial judge further correctly instructed the jury that under these Code provisions Ford was not an insurer of the plaintiff's safety while on its premises, and that "The word 'safety' or 'safe,' as used in the statutes, means such freedom from danger to life, health, safety or welfare as the nature of the employment will reasonably permit." See Section 4101.01, Ohio Revised Code; Bosjnak v. Superior Sheet Steel Co., 1945, 145 Ohio St. 538, 548–550, 62 N.E. 2d 305.

The trial judge's conclusion that these Ohio Code sections imposed upon Ford a duty to provide the plaintiff with a safe place to work was thus summarized in the court's opinion denying Ford's motion for judgment or a new trial: "There is evidence that Ford had employees working in and about the area where the accident occurred,—guards, watchmen, and others, preparing places for the storage and installation of Ford's equipment. Unless these Ohio statutes apply to 'frequenters' such as the plaintiff as an employee of a subcontractor doing work under the reserved direction and control of Ford, they could have no present force in any given case.

"They would have no consequential application to employees of employer Ford since under the Workmen's Compensation Act of Ohio [R.C. § 4123.01 et seq.] the Industrial Commission would make awards to injured employees of employer Ford without regard to compliance with the obligations of such statutes."

In the concrete application of the quoted statutory provisions to the facts at hand, the trial judge instructed the jury that Ford could properly be held liable only upon a single narrow theory. As summarized in the court's opinion overruling Ford's motion for judgment or a new trial, Ford's liability under the court's instructions was based solely upon the jury's finding that Ford "exercised its reserved control and direction by ordering two subcontractors to work in the same area one above the other; the floor layers on the ground, the painters of the automatic sprinkler system pipes overhead. Bringing these two sets of employees together in such manner was in Ford's interest, to speed up the work for its own occupancy of the space." [2]

2. The instructions actually given to the jury with respect to this theory of liability were as follows:

"As it seems to me the question of Ford Motor Company's legal liability comes down to whether you believe the evidence before you that it, as the owner and occupier of the property, through its employees, having contractually reserved the right of control and coordination of the work of the contractors, and thus charged with furnishing a reasonably safe place to work, and of seeing to the reasonably safe coordination of the work of the various kinds of trades as it progressed,—failed in its duty to exercise ordinary care to the extent of foreseeing that having the floor layers work beneath the painters of the sprinkler pipes at the same time, as testified by Dean and Knorr, presented some degree of risk or hazard; and whether in such situation you believe from the evidence that Ford, in the exercise of due care through its responsible employees, should have given some warning or instruction to Long Painting Company's workmen, or should have seen to it that some safety measures were taken or adopted by it, or its subcontractors, respecting the dangers reasonably to be foreseen if ropes from the scaffold should hang too far down while the hoist truck was dumping blocks for flooring in the same area and at the same time.

"If you do so conclude, do you further believe or find from the evidence that such failure upon the part of Ford directly caused or directly contributed, jointly with negligence of Jennison-

On this appeal Ford makes three separate contentions. First, it argues that Jennison-Wright and Ruffin were primarily liable and Ford was liable only secondarily, if at all, and that therefore when the plaintiff entered into covenants not to sue Jennison-Wright and Ruffin the plaintiff was thereafter barred from proceeding against Ford. Next, Ford contends that Sections 4101.11 and 4101.-12 of the Ohio Revised Code, which require an employer to keep his place of employment safe for employees and frequenters, imposed upon Ford no liability to the plaintiff in this case. Finally, Ford contends that the plaintiff had actual or constructive knowledge of all the conditions which combined to cause his injuries and was therefore barred from asserting a claim against Ford as the owner of the property where those conditions existed and the injuries occurred.

■ As to the first argument, it is true as Ford contends that in Ohio the release of a tort feasor primarily liable ordinarily operates to release one secondarily liable, regardless of an attempt to reserve rights against the latter. Hillyer v. City of East Cleveland, 1951, 155 Ohio St. 552, 99 N.E.2d 772. See Terry v. Memphis Stone and Gravel Co., 6 Cir., 1955, 222 F.2d 652.

However, it is clear from the court's instructions that the theory on which this case was submitted to the jury was that Ford, if liable at all, was primarily liable as a joint tort feasor. The plaintiff did not contend and the trial judge nowhere implied that liability could be imposed upon Ford because of the negligence of Ruffin or Jennison-Wright under the doctrine of *respondeat superior*. It was conceded throughout the trial that the latter were without question independent contractors. Ford's liability was based upon its alleged independent negligence in directing that the painting and floor laying work proceed simultaneously, without taking any steps to

Wright and Ruffin, to the plaintiff's accident? If so, the Defendant Ford would be liable.

"Now, I do not say to you that because Ford retained control and direction of the work and its coordination that it was responsible for every negligent manner in which the subcontractors carried out their respective jobs, or that in all circumstances was responsible for the safety of subcontractors' employees. Ford's witnesses deny that they had anything to do with ordering or bringing the floorlayers and the painters together; they say that Ferguson, the prime contractor, had that responsibility and did so, in keeping with its contract. And, of course, if you conclude that Ford had nothing to do with it and exercised no control or direction over such a situation as existed here, it cannot be held responsible.

"Your consideration and determination respecting Ford's fault as the cause of this accident is limited to the precise situation which I have submitted to you. It is your province to resolve the facts in evidence in the interest of determining the probable truth respecting Ford's liability in that situation."

The theory was repeated in somewhat different language, as follows:

"Was the Ford Company, through its Resident Engineer and other employees, at fault in failing to so coordinate the work in progress at the point of the accident when, in the exercise of ordinary care, they could, or should, have foreseen a potential hazard in painters using a tooth-pick plank, with surplus rope ends hanging down at the same place and time when men were dumping wood blocks from a hoist truck in preparation for laying the floor under the area where the Plaintiff and his fellow workers were painting the sprinkler pipes, and if so, was the Defendant Ford's failure in that respect the proximate or direct cause of the accident?

"To permit recovery in this case it is not essential that Defendant Ford's negligence be found to be the sole cause of the Plaintiff's injuries, but, if you find from the evidence that negligence of Ford, and negligence of Jennison-Wright's men and Ruffin, or either of them, jointly constituted the proximate or efficient cause of Tomlinson's injuries, the Defendant Ford may be held liable in such event for the negligence.

"However, if you find that Ford was negligent, but also conclude that the sole efficient cause of the accident was the intervening negligence of Jennison-Wright and Ruffin, or either of them, Ford would not be liable."

warn against dangers implicit in the dual operation. Compare Meyer v. Cincinnati Street Ry. Co., 1952, 157 Ohio St. 38, 104 N.E.2d 173.

■ In Ohio an injured person's release of or covenant not to sue one or more joint tort feasors does not extinguish his right of recovery against remaining tort feasors, if an express reservation of the injured party's rights against the other tort feasors is made. Adams Express Co. v. Beckwith, 1919, 100 Ohio St. 348, 126 N.E. 300. It follows that if the trial court was correct in the view that Ford was jointly and independently liable, if liable at all, it was also correct in concluding that Ford was not released from liability by the release of Jennison-Wright and Ruffin. The trial judge correctly instructed the jury of their duty to reduce their assessment of the plaintiff's damages by $13,500, the amount paid by Jennison-Wright and Ruffin. Under the theory of liability submitted to the jury, this was the extent of the advantage to which Ford became entitled by the release of its alleged joint tort feasors.

It remains to be considered, however, whether the court was in error in submitting the question of Ford's liability to the jury at all.

In support of its argument that it was not an "employer" and that the site where the plaintiff was injured was not its "place of employment" which would make it liable to the plaintiff as a "frequenter" under the Ohio statutes in issue, Ford points out that none of its equipment, tools, or machinery had been or could have been moved into the precise area where the plaintiff was injured and that none of its employees customarily worked on the floor in the area where the accident happened, much less on a scaffold located in the roof trusses sixteen feet above the floor.

Ford places prime reliance upon the decision of this court in Popowich v. American Steel & Wire Co., 6 Cir., 1926, 13 F.2d 381. In that case the plaintiff was employed by an independent contractor which had a window washing contract with the defendant. While washing a window of the defendant's building, the plaintiff fell and was injured. He based his right to recover on the statutes here in issue, alleging that the defendant had failed to place hooks or iron rings in the outer casings of the window to which a safety belt could be fastened. In affirming the district court's judgment dismissing the complaint, this court's opinion stated, "It is not claimed that any employee of defendant was required to work at the place where plaintiff was injured or to engage in the kind of work that he was doing. * * * Place of employment means, we think, the place where some employee is required to work, either temporarily or permanently. To include other places would be to divert the purpose of the statute and impose upon an employer the duty of making safe a place for one who is not an employee nor a frequenter of a place used temporarily or permanently by employees. To extend the duty to a place of that kind would be an expansion of the statute beyond its intended remedial effect." 13 F.2d at page 382. The reasoning of the Popowich case has recently been expressly approved by an Ohio Court of Appeals in a decision upon which Ford also relies. Pare v. Gemco Engineering & Mfg. Co., 1953, 95 Ohio App. 141, 118 N.E.2d 206.

The plaintiff on the other hand points to the presence in the general area of plant guards, who were concededly employees of Ford, and he relies upon the reasoning of the district court in concluding that the statutes imposed a duty upon Ford as an employer under the circumstances of this case. Specifically, the plaintiff calls our attention to the decision of this court in American Steel & Wire Co. v. Sieraski, 6 Cir., 1941, 119 F.2d 709. In that case an employee of an independent contractor received injuries resulting from a defective platform on the defendant-owner's premises. In concluding that the safety statutes imposed a duty upon the defendant in that case, this court pointed out that at

the time the plaintiff was injured the defendant's own employees were concurrently using the very platform that was defective. 119 F.2d at page 710.

In short, the circumstances of the present case seem to bring it somewhere between the factual situations in the Popowich and Sieraski cases.

■ As we understand the decisions of the Ohio courts, however, it is not necessary to decide whether the trial judge was technically correct or incorrect in concluding that the statutes in question applied to the circumstances of this case. The simple fact seems to be that, at least with respect to "frequenters," the Ohio appellate courts have not regarded those statutes as exacting a duty substantially different from that imposed generally by Ohio law upon an owner of property towards an invitee. This conclusion has been reached after examining the following decisions, among others: Bosjnak v. Superior Sheet Steel Co., 1945, 145 Ohio St. 538, 62 N.E.2d 305; Wellman v. East Ohio Gas Co., 1953, 160 Ohio St. 103, 113 N.E.2d 629; Schwarz v. General Electric Realty Corp., 1955, 163 Ohio St. 354, 126 N.E.2d 906; Hozian v. Crucible Steel Casting Co., 1937, 132 Ohio St. 453, 9 N.E.2d 143, 112 A.L.R. 333; Davis v. Charles Shutrump & Sons Co., 1942, 140 Ohio St. 89, 42 N.E.2d 663; Giovinale v. Republic Steel Corp., 1949, 151 Ohio St. 161, 171–172, 84 N.E.2d 904; Pare v. Gemco Eng. & Mfg. Co., 1953, 95 Ohio App. 141, 118 N.E.2d 206; Jackson v. Cincinnati Gas & Elec. Co., 1941, 70 Ohio App. 139, 42 N.E.2d 218; McKee v. New Idea, Inc., Ohio App., 1942, 44 N.E.2d 697, 36 O.L.A. 563, 589, 591.[3] Our at-

tention has been called to no case where an appellate court in Ohio has held that the statutes here involved either added to or detracted from the duty of exercising ordinary care which a property owner owes to an invitee. Similarly, this court's decision in the Sieraski case was bottomed alike upon the Ohio case law and statutes. 119 F.2d at page 711.

■ These statutes were obviously enacted primarily for the benefit of employees. Pare v. Gemco Eng. & Mfg. Co., 95 Ohio App. 141, 118 N.E.2d 206. They were rendered largely obsolete by the passage of the Ohio Workmen's Compensation Law. Perhaps for that reason they have received but scant recent attention from the Supreme Court of Ohio, except in the Bosjnak decision. 145 Ohio St. 538, 62 N.E.2d 305. Cf. Ohio Automatic Sprinkler Co. v. Fender, 1923, 108 Ohio St. 149, 141 N.E. 269. For example, although a large part of the Ohio Supreme Court's recent opinion in the Schwarz case, 163 Ohio St. 354, 126 N.E.2d 906, is devoted to distinguishing that case from the Bosjnak decision, supra, no point at all is made in that opinion of the fact that the safety statutes were relied upon in the earlier case and apparently not relied upon in the later one.[4]

■ We come then to a consideration of what standard of conduct the Supreme Court of Ohio has required of one in the defendant's position toward an employee of an independent contractor working on his premises. The recent decisions of that court have dealt primarily with the extent of the owner's duty to warn of a defective or danger-

3. The law of Ohio Supreme Court decisions since January, 1858, has been in the syllabus, written by the court, Rule VI, 94 Ohio St. ix.; 5 Ohio St. v; cf. 6 Ohio St. iii. But we are enjoined to read the syllabus with reference to the facts and issues presented in each case. Williamson Heater Co. v. Radich, 1934, 128 Ohio St. 124, 190 N.E. 403. A per curiam opinion of the Ohio Supreme Court has the status of a syllabus. Thackery v. Helfrich, 1931, 123 Ohio St.

334, 175 N.E. 449. By contrast, the syllabus of an Ohio Court of Appeals decision has no special dignity and has been held inferior to its accompanying opinion. Carruthers v. Kennedy, 1929, 121 Ohio St. 8, 11, 166 N.E. 801.

4. Although the Ohio Supreme Court, taking judicial notice of Ohio statutes, would presumably apply any that were relevant. State ex rel. City Loan & Savings Co. of Wapakoneta v. Taggart, 1938, 133 Ohio St. 382, 14 N.E.2d 10.

ous condition within the knowledge of the owner and neither known by nor obvious to the contractor's employee. Schwarz v. General Electric Realty Corp., 1955, 163 Ohio St. 354, 126 N.E. 2d 906; Bosjnak v. Superior Sheet Steel Co., 1945, 145 Ohio St. 538, 62 N.E.2d 305; Wellman v. East Ohio Gas Co., 1953, 160 Ohio St. 103, 113 N.E.2d 629. It was likewise that aspect of the duty of ordinary care with which this court was concerned in the Sieraski case, where it was pointed out "that the platform was known by appellant but unknown by appellee to be dangerous and unsafe; and that appellant failed to warn appellee of such hazardous condition." 119 F.2d at page 710.

If Ford's liability in the present case were based upon a failure to warn, the Ohio law would clearly require decision in Ford's favor. "Where the premises upon which construction work is to be performed by a contractor remains under the control of the principal employer while work is in the course of performance, a servant of the contractor is an 'invitee' and as such entitled to recover from the principal employer for any injury which he may sustain by reason of the abnormally dangerous condition of the premises, only if the principal employer has and the servant has not actual or constructive notice of the existence of such condition." Davis v. Charles Shutrump & Sons Co., 1942, 140 Ohio St. 89, Syl. 1, 42 N.E.2d 663. There was no hidden defect or danger here. That the work of laying the flooring was proceeding simultaneously with the overhead painting was a fact as obvious to the plaintiff as to Ford. Indeed, both the plaintiff and his foreman stated that they had observed the floor laying work in progress.

Not its failure to warn Tomlinson, however, but its affirmative action in arranging to have the floor laying and overhead painting proceed together was the basis of Ford's liability as submitted to the jury. As to that, the Ohio law is not so clear. Yet the decision of the Supreme Court of Ohio in Schwarz v.

General Electric Realty Corp., 163 Ohio St. 354, 126 N.E.2d 906, rendered after the present case was decided in the district court, directly points to the conclusion that Ford was entitled to judgment under the law of Ohio.

In that case the contractor's employee was injured when a crane with which he and fellow workers were unloading steel came in contact with an electric power line. The immediate cause of the accident was the negligence of one of the contractor's other employees. The plaintiff stated that he had not seen the wire and had not been warned of its potential danger. The court held that the defendant owner had performed its duty of exercising ordinary care by having previously warned the plaintiff's employer that the power line was energized.

In the present case, since the simultaneous progress of the painting and floor laying was obvious, there was as we have said no duty to warn the plaintiff of the situation, and therefore much of what is said in the Schwarz case is not here relevant.

But it clearly appears in the court's statement of the case in the Schwarz opinion that it was the defendant owner and occupier of the plant which had, through its resident engineer, "designated the unloading site" which was "directly under" the high-voltage power line. Moreover, it appears in the opinion that one of the errors complained of was the exclusion of additional evidence on this point, which the plaintiff would hardly have offered except as evidence of the defendant owner's negligence. The court rejected the contention tersely: "The plaintiff claims also that the trial court erred in excluding evidence offered by the plaintiff that defendant's agent had directed that the steel beams be unloaded in the area of the accident. This was not a controversial issue, and the evidence, if admitted, would have been merely cumulative. There was no prejudicial error in this respect." 163 Ohio St. at pages 360–361, 126 N.E.2d at page 910.

In the present case, as in the Schwarz case, the immediate cause of the accident was the negligence of employees of an independent contractor, over whom the defendant exercised no such control of the method or manner of their work as to make it liable under the doctrine of *respondeat superior*. In the Schwarz case as in this the defendant owner had directed that the plaintiff's work be carried on in an area where an accident occurred which would not have occurred if the work had been carried on elsewhere on the premises. In the Schwarz case the accident occurred because of proximity to a high-tension wire. In the present case the accident occurred because of proximity to the floor laying operations. Ford was under a duty no greater than was the defendant in the Schwarz case to foresee that other employees of the independent contractor would be negligent. We conclude that Ford violated no duty to the plaintiff under the law of Ohio.

The judgment of the district court is set aside and the case is remanded for the entry of a judgment in favor of the defendant.