**Luther CREASY, Appellant,**

v.

**OHIO POWER COMPANY, Appellee.**

No. 13036.

United States Court of Appeals
Sixth Circuit.

Nov. 1, 1957.

Bernard S. Glick, Hoboken, N. J. (Robert L. Mellman, Columbus, Ohio, of counsel), for appellant.

John C. Elam and Paul R. Gingher, Columbus, Ohio (Malcolm L. Miller, Gingher & Christensen, Columbus, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

While working on a pole of the Power Company near Hicksville, Ohio, appellant came into contact with energized electric wires and was severely injured. At the trial in the District Court, wherein he sought compensation for his injuries from the Power Company, the District Judge, at the conclusion of the plaintiff's evidence, directed a verdict for the defendant on the ground that there was no proof of negligence on its part, and on the further ground that the plaintiff was himself negligent.

The work at Hicksville was by contract being done by the Hoosier Engineering Company, concededly an independent contractor. Appellant was its employee and his specific job at the time of the accident was to change the spacing of clamps at or near the top of a 55′ pole belonging to the Power Company. On June 25, 1952, following the lunch period at noon, the appellant was requested by the Power Company's engineer to make adjustments on a crossarm of the pole. The crossarm was constructed of two timbers 8′ long and 4″ x 4½″ in width and depth, treated with creosote, and secured by bolts to each side of the pole and to each other. The crossarm was further secured to the pole by a V-shaped brace attached to the pole below the crossarm and to the crossarm itself. Two feet below the top crossarm but at a 45 degree angle to the top was another similarly constructed crossarm called a buckarm and 2 feet below the buckarm and parallel to the crossarm was another crossarm similar in construction. There were wires attached to both the crossarm and the buckarm, and four wires on the top crossarm were energized; the two nearest the pole being covered with a rubber blanket or rubber hose and the other two uncovered. There were energized wires attached to the buckarm and there were also energized wires on both sides of the pole on the lower crossarm.

The appellant came to the top of the pole passing in close proximity to both the covered and uncovered wires. He then stepped from the pole to the buckarm, hanging to the pole with one arm. He next put his safety belt around the pole and attached it to a ring in the belt around his waist, then leaned back to draw the safety belt taut and for the first time reached for the packet containing rubber gloves and sleeves, fastened to his belt on his right side. It was then that the plaintiff's feet went out from under him and he remembers no more concerning the accident.

Creosote is a distillate of coal tar and is used as a wood preservative. When heated and present in wood in sufficient quantities it comes to the surface of the wood and makes it slippery. The day was hot enough to cause the creosote on the buckarm to come to the surface by capillary action. Following the accident, spike marks were observed upon the buckarm, one running to its outer edge. The appellant had followed the instructions of the defendant's engineer in climbing the pole, as directed to do by his brother, Louis Creasy, who was his foreman in the employ of Hoosier.

The appellant's complaint merely recites that he sustained an electric shock from a wire charged with high voltage, owned and controlled by the Power Company, "by reason of the negligence of the defendant." No specification as to negligent acts or omissions by the defendant are therein set forth. It is to be derived, however, from the several interrogatories propounded by the appellant, the evidence at the trial, and the argument presented orally and in briefs, that the negligence relied upon was the slippery character of the buckarm, the failure to warn the appellant of that condition, and the refusal of the Power Company to

grant clearance on its wires when sought by the appellant, in view of the danger in working close to live wires.

The appellant was a lineman with twenty-two years experience. He had been working on the Power Company job for three weeks prior to the accident, had been up on the pole several times before and had stood on the same crossarm earlier on the very day of the accident; he knew the written safety rules of Hoosier and that they required him to put on his safety equipment consisting of rubber gloves and rubber sleeves when below the first hot wires. He so testified:

"Q. And when you say you climbed to them, they are overhead? A. Oh, yes.

"Q. When you cover up? A. Yes, sir.

"Q. And when you talk about covering up we mean putting on your rubber gloves and sleeves? A. Yes, that's right."

He was also aware of the written Union rules which required safety equipment to be put on before reaching the first hot wire and that a lineman must assume all wires to be "hot." In addition to the safety rules of Hoosier and the requirements of the Union rules, there was also evidence that the Hoosier Company periodically conducted oral discussions as to safety measures and the use of safety appliances when working in proximity to energized wires. In regard to the use of creosote, it was established without contradiction that it is a preservative of wood used by practically all electric power companies and its use constituted standard practice. It is, likewise, to be noted that the Hoosier Company had complied with the Workmen's Compensation Act of Ohio, R.C. § 4123.01 et seq.; that appellant had received full workmen's compensation benefits under the Act; and that following his injury the appellant was removed from the pole by other members of the Hoosier crew, who also finished the work without making any changes on the crossarms or the wires.

■■ As in all questions of liability for negligent acts or omissions, the first consideration is whether the evidence discloses some fault on the part of the defendant leading proximately to the plaintiff's injury. In the recent case of Ford Motor Company v. Tomlinson, 6 Cir., 229 F.2d 873, this court made a careful study of the standard of conduct which the Supreme Court of Ohio applies to one in the defendant's position toward the employee of an independent contractor working on his premises and found upon analysis of the recent decisions of that court that they have dealt primarily with the extent of the owner's duty to warn of a defective or dangerous condition within the knowledge of the owner and neither known by or obvious to the contractor's employee. We relied upon Schwarz v. General Electric Realty Company, 163 Ohio St. 354, 126 N.E.2d 906; Bosjnak v. Supreme Sheet Steel Company, 145 Ohio St. 538, 62 N.E.2d 305; Wellman v. East Ohio Gas Company, 160 Ohio St. 103, 113 N.E.2d 629; and Davis v. Charles Shutrump & Sons Company, 140 Ohio St. 89, 42 N.E.2d 663, 664. It is not here contended that Ohio has abandoned the common law tests of actionable conduct that liability must be imposed only if danger should have been perceived by a reasonably prudent man, under all circumstances of a particular case.

■ True, of course, it is that working in the vicinity of charged wires is a dangerous occupation but it is not foreseeable that an employee, invitee, or frequenter, would fail to make timely use of recognized safety appliances to minimize or avoid known hazards. We quoted from the Davis case, supra: "Where the premises upon which construction work is to be performed by a contractor remains under the control of the principal employer while the work is in the course of performance, a servant of the contractor is an invitee and as such entitled to recover from the principal employer for any injury which he may sustain by reason of the abnormally dangerous condition of the premises, only if

the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition." The appellant knew, as he must have known by reason of the rules and instructions of his employer, and the Union rules, not only the inherent danger residing in energized wires but that the danger could be minimized or avoided by resort to safety devices with which he was supplied for his own protection. He knew, or must have known, of the characteristics of creosote applied to wooden timbers and the effect of heat upon them. As the District Judge put it, "If the court were to sustain this position (the use of creosote), it would mean that all public utility companies must stop using creosoted poles and crossarms."

It is clear, from the appellant's own evidence, that when he reached the first energized wires, below the place where he was to do his work, he passed through, or in close proximity to them, without covering up by means of the safety devices with which he was equipped. The very effort of the plaintiff to show a custom by linemen to wait until arrival at the place where work was to be done before covering up gives emphasis to the fact that he did not cover up when reaching the first energized wires. It is true that some of these wires were covered with rubber blankets or rubber hose while other wires were uncovered, and even in respect to those that were covered the coverage was not in all cases complete. It was also clear that where he stood upon the buckarm he was exposed to uncovered wires on the top crossarm.

■ With respect to the characteristics of creosote, there can be but one reasonable inference and that is that the appellant knew crossarms would become slippery when subjected to heat. It was a hot day and while the temperature would be higher after lunch than before, his experience generally and immediately told him of the hazard in stepping upon the crossarm unequipped with the safety devices. Under the cited cases, there was, therefore, no duty to warn, even upon the assumption that the Power Company also knew of the danger. His knowledge of the hazard was fully as great as that of the Power Company, if not indeed more so. There was, therefore, under the Ohio decisions heretofore cited, no negligence in the use of creosote and no duty to warn a lineman of the possibility of a slippery condition on the narrow surface of the crossarm.

The present case must be decided by the application of Ohio law and the Schwarz case, supra, seems to be the last pertinent expression of it in respect to the duty of the owner of premises to the employee of an independent contractor. No reliance may, therefore, be placed upon the law of Master and Servant and the cases involving such relationship are not apposite; nor do §§ 4101.11, 4101.12 of the Ohio Revised Code apply. As we stated in Ford v. Tomlinson, supra, these Statutes were obviously enacted primarily for the benefit of employees. Pare v. Gemco Eng. & Mfg. Co., 95 Ohio App. 141, 118 N.E.2d 206. They were rendered largely obsolete by the passage of the Ohio Workmen's Compensation Law.

■ The failure to grant clearance on the lines was not negligence in view of the obligation of the Power Company to furnish light and power to the City of Hicksville while change-over was being made. This the appellant understood and knew the lines were energized for that purpose.

■ Since, in Ohio, freedom from contributory negligence is not part of the plaintiff's case but is a matter of defense, and since the case is to be decided upon the failure of the plaintiff to establish a duty to the appellant and the breach of that duty, we do not reach the question of contributory negligence and, so, the exclusion of evidence sought to be presented of a practice among journeymen linemen to pass through energized wires without putting on their safety equipment does not constitute prejudicial error. While we have referred to the Hoosier and Union rules and Hoosier instructions, these are merely matters of evidence and do not create

a standard of conduct. Wigmore on Evidence, 3rd Ed. § 461. We have referred to them only as they bear upon the appellant's knowledge of abnormal conditions, which relieved the Power Company of any duty to warn.

Judgment affirmed.