OPINION
Defendant-appellant, City of Youngstown (City), appeals a decision rendered by the Mahoning County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Western Reserve Construction Company, Inc. (WRC), against City.
A review of the record establishes the following uncontroverted facts. In an effort to correct a section of damaged sewer pipe, the City of Youngstown Waste Water Department contracted with WRC to repair approximately two to three hundred feet of damaged sewer line and two manholes at the intersection of Brunswick Place and Susan Circle, Youngstown, Ohio. WRC began its excavation work on June 25, 1996. Prior to this time, the surrounding underground utilities were marked. The City of Youngstown Water Department (Water Department) marked the location of the surrounding waterlines with blue paint.
WRC attempted to correct the sewer back-up problem by excavating the ground near the damaged sewer pipe. WRC estimated that the proper depth for the excavation would be approximately nineteen feet in depth. WRC recognized that the area's soil conditions were sandy, runny, and unstable, and chose to use a set of interlocking steel shielding plates (sheet pilings). These sheet pilings were used to prevent the ground from caving in and to protect the surrounding utilities, lines, and mains. WRC placed the sheet pilings around three sides of the excavation.
WRC began digging. After digging approximately six feet down from the surface, WRC discovered a pocket of very wet material, which was not native to the excavation area. WRC concluded that the foreign material was a slag-based material used to backfill a hole from a previous waterline break. Testimony also showed that there had been three additional waterline leaks in this area over a thirty-year period. WRC continued its excavation operation.
WRC ceased its excavation operation around 5:00 P.M. that evening and secured the construction site from pedestrians. Around midnight on June 26, 1996, Thomas Mirante (Mirante), Assistant Superintendent at the Waste Water Treatment Plant, arrived at the excavation site to conduct a standard pumping procedure. Mirante observed no signs of a waterline break at this time. Sometime during the night the waterline broke. The parties agree that a shift in the ground occurred. As a result of the waterline break, water flooded the sewers and manholes, and caused water to back-up into numerous homes in nearby areas.
On June 24, 1998, plaintiffs, Elsie Fabek, et al., brought suit against City and WRC to recover for property damage caused by the waterline break and sewer backup. WRC filed its answer to plaintiffs' complaint, and also filed a cross-claim against City alleging that City was the sole and proximate cause of plaintiffs' injuries. WRC also sought contribution against City. On September 14, 1998, City filed its answer to plaintiffs' and WRC's complaint.
WRC filed a motion for summary judgment on August 31, 1999. WRC moved for summary judgment against the plaintiffs and City arguing that: (1) WRC did not breach a duty of care to the plaintiffs as the actions taken by City were the proximate cause of plaintiffs' injuries, and (2) City was strictly liable for the damages sustained from the break in the waterline. The plaintiffs and City each filed motions in opposition to summary judgment.
On October 14, 1999, the trial court granted summary judgment in favor of WRC and found that City had offered no evidence that WRC acted negligently. City filed a motion to modify the trial court's judgment entry on October 25, 1999 to include the requisite Civ.R. 54(B) language. The trial court sustained the motion on December 9, 1999, and added the words "there being no just reason for delay" to its original judgment entry.
City filed a timely notice of appeal on December 10, 1999. In response, WRC filed a motion to dismiss this appeal alleging that the trial court's October 14, 1999 order was not a final appealable order. On February 3, 2000, this court overruled that motion.
City raises two assignments of error on appeal. City's first assignment of error states:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE DEFENDANT-APPELLANT DEMONSTRATED THE EXISTENCE OF GENUINE ISSUES OF MATERIAL FACTS"
City's second assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING THAT THE CITY OF YOUNGSTOWN PRESENTED NO EVIDENCE OF NEGLIGENCE ON THE PART OF WRC AND THAT, CONSEQUENTLY, BECAUSE THE CITY OF YOUNGSTOWN PRESENTED NO SUCH EVIDENCE, THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REQUIRING LITIGATION OF THE CLAIMS AGAINST WRC"
City's assignments of error raise common issues of legal analysis and will be addressed together.
In City's assignments of error, City argues that the trial court erred in granting summary judgment in favor of WRC. City argues that when the evidence is viewed in a light most favorable to it, there is a genuine issue of material fact as to whether or not WRC acted negligently. City has set forth two primary arguments in support of its position. First, City argues that there is a genuine issue of material fact as to whether WRC acted negligently by leaving a void between the sheet pilings and the side of the excavation where the waterline broke. City argues that if there would not have been a void between the sheet piling and the side of the excavation where the waterline broke, then the waterline would have had nowhere to shift, and consequently would not have broke.
Next, City argues that WRC acted negligently by failing to notify the Water Department to "valve down" the intersection. City argues that it was WRC's responsibility to notify the Water Department to valve down the intersection prior to beginning its excavation activity. City argues that, as an experienced contractor, WRC should have known how to properly protect the excavation site.[1]
In response to City's arguments, WRC asserts that the trial court did not err in granting summary judgment against City. WRC argues that City neither introduced evidence showing negligence on the part of WRC nor evidence establishing genuine issues of material fact that require litigation. WRC argues that City is essentially attempting to fabricate issues of material fact and argues that City cannot use inconsistencies between its own agents to create issues of fact.
The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280 . The court stated:
 "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.
State ex rel. Parsons v. Flemming (1994), 68 Ohio St.3d 509, 511. When reviewing a summary judgment case, appellate courts are to apply a denovo standard of review. Cole v. American Indus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552.
Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248. City asserts WRC acted negligently. The essential elements of negligence are a duty, breach of duty, and injury resulting proximately therefrom. Strother v. Hutchinson (1981), 67 Ohio St.2d 282.
The existence of a duty depends on the forseeability of the injury.Menifee v. Ohio Welding Products (1984), 15 Ohio St.3d 75, 77, citingFord Motor Co. v. Tomlinson (C.A.6, 1956), 229 F.2d 873. For liability to attach, a defendant's failure to conform to this standard of care must be the actual and proximate cause of plaintiff's injuries. Strother,67 Ohio St.2d at 286-87.
In applying the law to the present facts, a thorough review of the record indicates that the trial court erred by granting summary judgment in favor of WRC.
As a preliminary matter, WRC met its initial summary judgment burden by pointing to evidence in the record showing an absence of a genuine issue of material fact. WRC directed the court's attention to the testimony of WRC's owner and president Richard Popio (Popio), who testified that WRC acted within the standard of care. WRC also presented the testimony of former City Engineer and current Mahoning County Engineer Richard Marsico (Marsico), who testified that WRC had adequately secured the excavation site and that it was his opinion that the waterline break had resulted from faulty installation and repairs by City. Marsico also testified that it was the Water Department's ultimate responsibility, not WRC's, to valve down the intersection. Therefore, WRC met its initial burden by demonstrating the absence of a genuine issue of material fact as to its negligence.
Upon this showing, the burden under Civ.R. 56 then shifted to appellants to show that there was a genuine issue of material fact for the trier of fact to consider. City presented the testimony of the Chief Engineer of the Water Department, Eugene Leson (Leson) who opined that WRC failed to provide proper lateral support of the excavation site. Leson further opined that WRC's failure to provide proper lateral support of the excavation site resulted in the waterline break. City supported Leson's testimony with the testimony of Thomas Mirante (Mirante), Assistant Superintendent of the Youngstown Waste Water Treatment Plant. Mirante also opined that WRC failed to provide proper lateral support for the excavation site, and this failure resulted in the waterline break.
City also produced evidence showing that there was a genuine issue of material fact as to whether or not WRC acted negligently by failing to notify the Water Department of the need to valve down the water in the surrounding neighborhood prior to beginning its excavation. Leson stated in his deposition that it was a common practice and the contractor's duty to notify the Water Department of the need to valve down the area. Leson stated that WRC never notified the Water Department to valve down the area. This testimony also tends to raise a genuine issue of material fact as to whether or not WRC acted negligently.
Each party presented conflicting evidence as to the question of whether or not WRC acted negligently in its excavation procedures and whether WRC acted negligently by failing to notify the Water Department to valve down the area. This conflicting testimony creates issues of credibility that can only be determined by the trier of fact. Turner v. Turner (1993),67 Ohio St.3d 337, 341-342.
A review of the record shows that WRC's arguments are unsubstantiated. In particular, as noted in his deposition, although at the time of the incident Marsico held the position of City Engineer, at the time Marsico was deposed he occupied the position of Mahoning County Engineer, a position that is separate and distinct from the position of City Engineer. Therefore, contrary to WRC's argument, Marsico was not testifying as an agent of City. In addition, Marsico, even in his position as City Engineer, had no supervisory authority over Leson.
When WRC deposed Marsico, his testimony operated as expert testimony in favor of WRC. The conflicting testimony of Popio, Marsico, Leson, and Mirante, can simply be viewed as conflicting expert testimony. The witnesses viewed the site at different times, occupied different positions, and possess differing fields of expertise. The inconsistencies of their testimony demonstrate that there is a genuine issue of material fact as to whether or not WRC was negligent in its excavation of the work site, and whether WRC was negligent in failing to notify the Water Department to valve down the area prior to beginning its excavation activities.
As correctly noted by City, City need not have conclusively proved that WRC had been negligent, but need only have presented evidence to show that WRC might have been negligent. A thorough review of the record shows that City has presented enough evidence to show that genuine issues of material fact exist as to WRC's negligence to merit trial.
For the foregoing reasons, City's assignments of error are well taken.
The judgment of the trial court is hereby reversed and this case is remanded for trial on the merits.
HON. GENE DONOFRIO, HON. JOSEPH J. VUKOVICH, and, HON. MARY CACIOPPO, RETIRED, of the Ninth District Court, and of Appeals, sitting by assignment.
CACIOPPO, J., dissents; see dissenting opinion
[1] City also argues that the trial court erred in granting summary judgment against City on a theory of strict liability. Although WRC presented the argument in its motion for summary judgment that City was strictly liable for the break of a waterline and cited Jennings Buick,Inc. v. City of Cincinnati, (Sept. 28, 1977), Hamilton App. No. C-76679, unreported, in support of its argument, City correctly informed the trial court in its motion in opposition to summary judgment that the JenningsBuick decision had been overruled by the Ohio Supreme Court in JenningsBuick, Inc. v. City of Cincinnati (1978), 56 Ohio St.2d 459 . In JenningsBuick, the Ohio Supreme Court held that strict liability would not be imposed on a city for damages caused by a waterline break absent a showing of negligence on the part of the city. Id. at 467. Since City discussed the overruling of Jennings Buick in its motion in opposition to summary judgment, and because the trial court did not reference the issue of strict liability in its summary judgment order, the court will not assume that the trial court granted WRC's summary judgment motion on the basis of strict liability. Therefore, the issue need not be addressed further on appeal.