Stewart, J.
 

 In the present case not only were the driveways leading into Shell’s premises constructed by Shell but the sidewalk between such driveways was relaid by it.
 

 There can be no question that the driveways were constructed primarily for the benefit of Shell and its customers, although portions of the driveways were a part of the sidewalk over which pedestrians walked.
 

 Ordinarily, where an abutting owner has constructed a sidewalk along his premises and a municipality has accepted it, the responsibility for keeping the sidewalk open, in repair and free from nuisance is not the responsibility of the abutting owner but is the •sole duty of the municipality. Consequently, if a pedestrian is injured as the result of the failure to keep a sidewalk open, in repair and free from nuisance, he has no claim against the abutting owner but can hold the municipality liable for its neglect, and the municipality cannot recover indemnity on account of a judgment recovered against it for injuries occasioned by the abutting owner’s negligent construction of the walk or failure to maintain it.
 
 Wilhelm
 
 v.
 
 *559
 

 City of Defiance,
 
 58 Ohio St., 56, 50 N. E., 18, 65 Am.. St. Rep., 745, 40 L. R. A., 294.
 

 However, where a city becomes liable in
 
 damages-
 
 by reason of the negligence of an owner on a public street in creating and maintaining for his own use and benefit a nuisance in a sidewalk, the property owner is primarily liable and the city secondarily liable to-the injured party, and if the city is obliged to respond' in damages to the injured party because of its liability, it will be subrogated to the right of the injured party and may recover over its loss from the property owner, the one primarily liable.
 
 Herron
 
 v.
 
 City of Youngstown,
 
 136 Ohio St., 190, 24 N. E. (2d), 708.
 

 In the
 
 Kerron case
 
 the property owner maintained a steel trapdoor covering a basement entrance, which trapdoor was a part of a municipal sidewalk. While walking over the trapdoor one Herron was injured by a protrusion from it and he asserted a claim against the abutting owner who maintained the trapdoor for his exclusive benefit., The owner settled Herron’s claim and Herron acknowledged full satisfaction from him and released and discharged him from liability on account of the injuries and covenanted not to sue him or to prosecute any pending action to which he was a party on account of his injuries.
 

 Herron expressly reserved his rights and causes of action against the municipality and all other persons who might have wrongfully caused or contributed to his injuries.
 

 Herron sued the municipality which set up the settlement Herron had made with the abutting owners as a bar to his action against the municipality.
 

 The second- and third paragraphs of the syllabus in the
 
 Herron case
 
 are as follows:
 

 “2. Where a liability arises against both a city and an owner of property abutting on a public street in favor of a party injured by the sole negligence o£
 
 *560
 
 such property owner in creating and maintaining for his own use and benefit a trapdoor in a sidewalk, such injured party may sue either the property owner, primarily liable, or the city, secondarily liable, of both in separate actions, as a judgment against one, until satisfied, is no bar to an action against the other, the injured party being entitled to satisfaction from either the city or property owner, or from both.
 

 “3. In such latter case, if the injured party makes a partial settlement with and releases the property owner’s lessees, who were in actual control of the premises at the time of the accident and whose liability, if any, is primary to that of the city, such settlement will bar his action against the city to recover the remainder of his damages for such injuries.”
 

 It has long been the law of this state that in a situation where a city is liable to a person for failure to keep its highways or sidewalks open, in repair and free from nuisance, under Section 3714, General Code, and an abutting owner is also liable for active negligence in creating the nuisance for which the city is liable, the owner and the city are not joint tort-feasors, but in such a case the one who actively creates the nuisance is primarily liable and the city only secondarily so.
 
 City of Zanesville
 
 v.
 
 Fannan,
 
 53 Ohio St., 605, 42 N. E., 703, 53 Am. St. Rep., 664;
 
 Morris
 
 v.
 
 Woodburn,
 
 57 Ohio St., 330, 48 N. E., 1097; and
 
 Bello
 
 v.
 
 City of Cleveland,
 
 106 Ohio St., 94, 138 N. E., 526.
 

 It follows that under such circumstances if the city is sued and compelled to respond in damages it is subrogated to the injured party’s right against the one primarily liable,
 
 %.
 
 e., the city has the claim of the one injured against the primarily liable tort-feasor. Its right is derived from the injured party and if the injured party has destroyed his right against the one primarily liable he cannot thereafter pursue the city
 
 *561
 
 in its capacity as a party secondarily liable because the latter has been cut off from its remedy against the one primarily liable by the action of the injured party.
 
 Herron
 
 v.
 
 City of Youngstown, supra; Bello
 
 v.
 
 City of Cleveland, supra.
 

 In the case of joint tort-feasors, the injured party may settle his claim against one of them, reserving the right to sue the other, and the amount the injured party receives from the one can be set off
 
 pro tanto
 
 against the injured party’s claim against the other tort-feasor.
 

 It is conceded in the present case that if there was any liability upon the part of Shell for plaintiff’s injuries plaintiff’s settlement with Shell would foreclose plaintiff’s right of action against the city. However, it was the claim of plaintiff, and it was so held by the trial court, that there was no legal responsibility upon the part of Shell for plaintiff’s injuries and that since Shell was not liable at all for them there was no question of primary and secondary liability in the present case.
 

 It was argued by plaintiff that, since the city was liable to plaintiff and since in the event of a recovery against the city it could not then recover over against Shell, the city lost no rights against Shell because of plaintiff’s settlement with it, and therefore the settlement was not a bar to plaintiff’s rights against the city in the present case.
 

 The city contends that, since plaintiff asserted a claim of liability against Shell and prosecuted • that claim to a substantial settlement and since Shell paid nearly $3,500 to plaintiff and her husband because of plaintiff’s injuries, plaintiff is precluded from showing that there was no liability upon the part of Shell for her injuries or that the city lost its right of subrogation as one secondarily liable because of the settlement with Shell.
 

 
 *562
 
 The Court of Appeals took the view that Shell was not legally liable for plaintiff’s injuries; that therefore the settlement with Shell was no bar to plaintiff’s proceeding against the city; and that in equity and good conscience it was error not to credit against any recovery against the city the sum received by plaintiff in her settlement with Shell.
 

 The decisions of the courts are conflicting as to the effect of a release of one person from liability for a tort upon the liability of another for the same injury, as influenced by the fact that the person so released was not in fact or law liable, although, as stated in 45 American Jurisprudence, 702, Section 38, many of the decisions may, perhaps, be harmonized by reference to the distinction now so widely recognized between the effect of a release for a consideration not intended as compensation, and the effect of the receipt of a sum of money regarded as compensatory damages.
 

 That section goes on to state:
 

 “Some courts hold that a release, for a consideration, of one not shown to be a joint wrongdoer, will not operate to discharge others who are responsible, at least where the consideration for the release has not in fact been accepted as a satisfaction for the injury. Other courts adhere to the view that, from whatever source compensation for an injury is accepted, it will operate as a satisfaction, so that in equity and good conscience the law will not permit the party so compensated to recover again for the same ’ injury; that the validity of the release is in no way dependent upon the validity of the claim, and, therefore, whether the person from whom the satisfaction came was or was not legally liable is immaterial. But in the opinion of some courts there must have been at least an appearance of liability, that is, something in the nature of a claim on the one
 
 *563
 
 hand, and a possible liability under the rules of law-on the other.”
 

 Most of the cases in which this question was involved are ones in which the question of the release of one joint tort-feasor by a settlement with another was before the court. Ordinarily such a release releases all other joint tort-feasors unless there is a reservation in the release not to release them, but the principle as to release is the same as in the present case.
 

 In
 
 Hubbard
 
 v.
 
 St. Loins & Meramec River Rd. Co.,
 
 173 Mo., 249, 72 S. W., 1073, the Supreme Court of Missouri quoted from
 
 Tompkins
 
 v.
 
 Clay Street Ry. Co.,
 
 66 Cal., 163, 4 P., 1165, as follows:
 

 “ ‘The compromise of the asserted claim does not necessarily involve an admission on the part of him against whom the claim is asserted, that the claim is well founded * * *. But the other party ought not to be allowed to deny that he had any right to the money, the payment of which he had induced under pain of the prosecution of an action already commenced. He should not be permitted to say with any beneficial result to himself, “I pursued the defendant
 
 falso clamore,
 
 and I took his money by way of settlement of a pending action in which I never could have recovered.” ’ ” See, also,
 
 Abbott
 
 v.
 
 City of Senath
 
 (Mo.), 243 S. W., 641.
 

 The Supreme Court of Indiana has held to the view that where there is an appearance of liability which is something in the nature of a claim and there is a settlement by the one against whom the claim is made, the claimant thereafter is precluded to say that the one against whom he made the claim was without fault.
 

 In the case of
 
 Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.
 
 v.
 
 Hilligoss,
 
 171 Ind., 417, 86 N. E., 485, 131 Am. St. Rep., 258, the N. E. headnote reads:
 

 “While one who compromises a claim does not necessarily admit that the claim was well founded, the
 
 *564
 
 one who receives the consideration is precluded from denying that it was well founded, and, when a pretended claim for a tort has been settled and satisfaction has been rendered the claimant by one so connected with the wrong as to be reasonably subject to an action and possible liability as a joint tort-feasor, the satisfaction will release all who may be liable, though the one released was not liable. ’ ’
 

 In the opinion the court said:
 

 “With reference to the releasor and releasee, it may be said that the courts will not permit one suffering a wrong to profit by the fears of those occupying positions subjecting them to the suspicion of being the wrongdoers, and who are willing to buy their peace rather than run a risk at law. One who compromises a claim does not necessarily admit that the claim was well founded, but the one who receives the consideration is precluded from denying that it was. So it may be said that when a pretended claim for a tort has been settled by treaty, and satisfaction rendered to claimant by one so connected with the trespass as to be reasonably subject to an action and possible liability, as a joint tort-feasor, the satisfaction rendered will release all who may be liable, whether the one released was liable or not. In such a case it is not necessary that it should appear that the party making the settlement was in fact liable. It will be deemed sufficient if there is an appearance of liability; that is, something in the nature of a claim on the one hand, and a possible liability under the rules of law on the other.”
 

 It' seems to us that that case expresses a logical and reasonable rule of law.
 

 It may be argued that if a claim is utterly and obviously unfounded, or if a settlement is made with a claimant for a mere token payment so as to avoid the nuisance of a claim or as a donation to the claimant,
 
 *565
 
 such a claimant would have an action against the real wrongdoer who caused his injuries and would not be bound by a release he gave under the above circumstances. But such a situation does not exist in the present case.
 

 Shell settled with plaintiff and her husband upon the basis of acknowledging a genuine claim. We cannot be so naive as to consider, even in these days of inflation, that nearly $3,500 is a token payment to avoid the nuisance of a claim or that Shell, being a stranger to plaintiff, intended merely to give her a donation.
 

 The release given by plaintiff to Shell recites many times that plaintiff was a claimant and it demonstrates upon its face that the settlement between Shell and plaintiff was on account, of the claimed liability of Shell for plaintiff’s injuries. If we give plaintiff credit for good faith, she, with her lawyer, must have considered that she had a bona fide claim against Shell, and assuredly Shell recognized some feeling of legal responsibility not only because of the settlement ii made but likewise because immediately after plaintiff’s accident Shell first made a temporary repair to the sidewalk involved and later a permanent one.
 

 It was not and may not be perfectly clear that Shell was entirely blameless. It must be remembered that the sidewalk involved in the present case was not an ordinary one.
 

 Shell had built a driveway, a part of which constituted part of the sidewalk, and was using the driveway with its ascending slope for its own use and that of its customers. Shell had relaid the remaining portion of the sidewalk and the city, in the present case, is claiming strenuously that under the evidence Shell was, because of its extraordinary structure over the sidewalk, primarily liable to plaintiff.
 

 If we give the city credit for good faith in the as
 
 *566
 
 sertion of its claims, it is reasonable to suppose that if plaintiff had brought an action against the city in the first instance and recovered a verdict and judgment, the city as the subrogee of plaintiff would have proceeded against Shell. That would have entailed the defense of a law suit by Shell and, in view of Shell’s action with reference to plaintiff, might reasonably have entailed at least a settlement upon its part with the city. By virtue of its settlement with plaintiff Shell was entitled to be free from any further claim against it because of plaintiff’s injuries, and any claim the city might have against Shell, being derived from plaintiff, was destroyed by the release of Shell by plaintiff. Under such circumstances, we are of the opinion that although Shell did not acknowledge liability by compromising the claim of plaintiff against it, plaintiff is precluded from denying that she, in good faith, had a valid claim against Shell. If she had, and settled it, she is barred from an action against the city under the authority and reasoning of
 
 Herron
 
 v.
 
 City of Youngstown, supra.
 

 The judgment of the Court of Appeals is reversed and final judgment is entered for the city.
 

 Judgment reversed.
 

 Weygandt, C. J., Zimmerman, Midddeton, Matthias and Hart, JJ., concur.
 

 Taft, J., not participating.