116 So.2d 57 (1959)
Thomas WILLIAMS, Jr.,
v.
Walter MARIONNEAUX, Jr. et al.
No. 4901.
Court of Appeal of Louisiana, First Circuit.
November 16, 1959.
Rehearing Denied December 21, 1959.
*58 Erlo J. Durbin, Denham Springs, Huckabay & Wall, Baton Rouge, for appellant.
Seale, Hayes, Smith & Keogh, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, TATE and CULPEPPER, JJ.
CULPEPPER, Judge.
In this suit, the plaintiff, Thomas Williams, Jr., has appealed from an adverse judgment of the lower court sustaining exceptions of no cause or right of action and res judicata. The alleged facts out of which this cause of action arose are that on July 7, 1958 the plaintiff, while a pedestrian on the Mississippi River Bridge at Baton Rouge, was seriously injured when he was struck by a portion of a log truck owned and operated by Albert Blanchard. Blanchard carried with the American Fidelity and Casualty Company a policy of public liability and property damage insurance with limited coverage of $5,000 for injuries to any one person. The plaintiff entered into a compromise agreement with Blanchard and his liability insurer, fully and completely releasing them in consideration of the sum of $4,750 which was paid and accepted. The release instrument contained the following pertinent language:
"I, Thomas Williams * * * for the sole consideration of $4,750 * * do hereby release, acquit and discharge the said Albert B. Blanchard and Fidelity and Casualty Company, Inc. only, from all claims and demands, actions and causes of actions, damages, costs, loss of service, expenses and compensation on account of, or in any way growing out of bodily injuries and property damage resulting or to result from accident that occurred on about the 7th day of July, 1958 * * * and do hereby * * * covenant * * to indemnify and save harmless the said Albert B. Blanchard and Fidelity and Casualty Company, Inc. only, from all claims and demands for damages, *59 costs, loss of service, expenses, or compensation on account of or in any way growing out of said accident or its results both to person or property.
"It is further agreed that this release expresses a full and complete settlement of a liability claimed and denied, and regardless of the adequacy of the compensation, is intended to avoid litigation and that there is absolutely no agreement on the part of the said Albert B. Blanchard and Fidelity and Casualty Company, Inc. only, to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. I, Thomas Williams, Jr., reserve all of my rights against Walter Marionneaux, Jr. and his liability insurers."
The above release agreement was signed on October 2, 1958 and then on November 4, 1958 the plaintiff filed this suit against Walter Marionneaux, Jr. and his liability insurer, General Accident Fire and Life Assurance Corporation, Ltd., for the sum of $59,110.90. In his petition the plaintiff alleges that he was injured by the negligence of Albert B. Blanchard and that the said Blanchard at the time of said accident was the agent, servant and employee and engaged in the course of such employment of Walter Marionneaux, Jr. No negligence is alleged on the part of Marionneaux. The sole grounds on which recovery is sought against him is that of respondeat superior.
The defendants, Marionneaux and General Accident, filed an answer denying both agency and negligence and then a few weeks later Marionneaux and General Accident filed a supplemental answer in which it was alleged that if it should be determined that Blanchard was the agent for Marionneaux, then the release as to Blanchard constituted a release as to Marionneaux. On the same day they filed their supplemental answer, Marionneaux and General Accident filed a third party complaint in which they sought to bring in the American Fidelity and Casualty Company, Blanchard's liability insurer, as a third party defendant on the theory that if judgment is rendered in this suit in favor of the plaintiff and against Marionneaux and General Accident, then they are entitled to have judgment over against American Fidelity and Casualty Company, Inc., as liability insurer for Blanchard, for the full amount of any judgment which may be rendered against Marionneaux and General Accident in favor of the plaintiff. Then American Casualty Company filed a third-party complaint in which they sought to bring in Thomas Williams, Jr., the original plaintiff, on the theory that Williams has in the act of release agreed to indemnify and save harmless American Fidelity and Casualty Company and its insured, Albert B. Blanchard, and therefore if any judgment is rendered herein over and against American Fidelity and Casualty Company, then under the specific contractual language of said release instrument, American Fidelity and Casualty Company is entitled to be indemnified and held harmless from said judgment by the plaintiff Williams.
Exceptions of no right or cause of action and exceptions of compromise and res judicata were then filed by the defendants Marionneaux and General Accident and also by the third-party defendant, American Fidelity and Casualty. The lower court in a well-reasoned opinion rendered judgment sustaining all of these exceptions and dismissing plaintiff's suit at his cost. From this judgment plaintiff has appealed.
The question presented to this Court for determination is whether the contract of release discharging the employee and his liability insurer and agreeing to indemnify and hold them harmless from all further claims, necessarily and automatically releases and discharges Marionneaux, the employer and his liability insurer whose liability is only vicarious and derivative under the doctrine of respondeat superior, despite the attempted reservation of rights against Marionneaux and his liability insurer. *60 If we answer this question in the affirmative, the judgment of the lower court must be affirmed.
Able counsel for the plaintiff argues in his brief to this Court that there is no precedent in Louisiana jurisprudence with facts exactly like the present case and that an affirmation of the judgment of the lower court will have far-reaching effect and will preclude the possibility of making such a settlement as this with the employee who is primarily liable and then proceeding against the employer who is only secondarily liable under the doctrine of respondeat superior. Counsel for the plaintiff admits that the employee and the employer are not joint tort-feasors, that there is only one tort-feasor, the employee Blanchard, and there is only one debt or obligation for the injuries arising out of the action, but counsel argues that there are two persons who are liable for this debt, although one is primarily liable and the other only secondarily liable, and there is no reason under our statutes or jurisprudence why you cannot make a settlement with the one who is primarily liable and then proceed against the one who is secondarily liable. Plaintiff's counsel has cited no authority from Louisiana or any other of our sister states which hold this to be the law. He simply attempts to distinguish on the facts the case of Cox v. Shreveport Packing Company, 213 La. 53, 34 So.2d 373, and McKnight v. State, La. App., 68 So.2d 652, which were cited by the lower court and which will be discussed later in this opinion and then he cited Landry v. New Orleans Public Service Commission, 177 La. 105, 147 So. 698, as authority for the general proposition that relinquishment of rights is not favored by our jurisprudence and no one is presumed to have renounced his rights unless it clearly appears that he intended to do so.
Able counsel for the defendants have filed exhaustive briefs in which they have absolutely destroyed plaintiff's position. Defendants call our attention to the fact that the sole and only grounds on which Marionneaux is sought to be cast in judgment is respondeat superior. They further call our attention to the particular phraseology in the act of release by which plaintiff Williams, in consideration of a payment of $4,750, fully and completely releases Blanchard and American Fidelity and Casualty Company and agrees to hold them harmless and to indemnify them for all losses, costs, expenses, etc. growing out of said accident. They next call our attention to the well-established rule of law that a party secondarily liable, if cast in judgment upon vicarious responsibility, has a right of indemnification over against the actual tort-feasor. Defendants cite the recent case of Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417, 427, decided by the First Circuit Court of Appeal and from which they quote the following:
"(9, 10) Under the doctrine of respondeat superior Boyce-Harvey (and therefore Travelers under its policy insuring Boyce-Harvey against such liability) is liable to third parties for the negligence of its employees (such as Jones) while acting in the scope and course of employment. But such liability is vicarious only and does not constitute Boyce-Harvey a joint-tort-feasor or render it solidarily liable with its negligent employee, Cox v. Shreveport Packing Co., 213 La. 53, 34 So.2d 373. Ordinarily, in fact, an employer may recover from his employee the damages the latter's negligent conduct has caused the employer to pay a third party, Costa v. Yoachim, 104 La. 170, 28 So. 992; Brannan, Patterson & Holliday v. Hoel, 15 La.Ann. 308; see also, Hardtner v. Aetna Casualty & Surety Company, La.App., 189 So. 365 at page 370."
See also Appalachian Corporation v. Brooklyn Cooperage Company, 151 La. 41, 91 So. 539; Sutton v. Champagne, 141 La. 469, 75 So. 209, and Rumpf v. Callo, 16 La. *61 App. 12, 14, 132 So. 763, which recognize this well-established rule that there is a right of indemnification, by which a party cast for vicarious liability, may have his right of action over against the tort-feasor.
Following this line of argument, we therefore see that if the plaintiff Williams should take judgment in these proceedings against Marionneaux and his insurer, then Marionneaux would be entitled to judgment over against Blanchard and his insurance carrier, and Blanchard and his insurance carrier would be entitled to judgment over against the plaintiff, Williams, under the indemnification and hold harmless agreement which is contained in the act of release. As counsel for defendants have aptly put it, "We would have an endless circle of legal futility."
In addition to the above argument that allowing plaintiff to proceed with this suit would only result in an endless circle of legal futility, we find many authorities holding that release of the primary obligor also discharges the secondary obligor because this result is inescapable under the laws of subrogation. It is elementary that where the claimant sues only the party secondarily liable and obtains judgment, the party secondarily liable is then subrogated to the rights of the claimant and legally stands in his shoes. He has all of the rights, but is also subject to all of the limitations of the subrogor. See 83 C.J.S. verbo Subrogation §§ 9, 10, 14, pp. 604-612. See also Stevens v. Mitchell, Sup.Ct.1958, 234 La. 977, 102 So.2d 237. Therefore, if the claimant has fully released the tort-feasor, the claimant's subrogee is also bound by this release. Where the claimant's subrogee is the secondary obligor attempting to obtain judgment over against the party primarily liable, the secondary obligor would then be cut off from his rights to indemnification by a contract of release to which he was not a party but by which he is denied his legal rights. This result would obviously deny to secondary obligors their legal right to recovery over against primary obligors.
Some of the many authorities supporting this conclusion are:
(1) 76 C.J.S. Release § 50, p. 689:
"In a situation where * * * one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable * * *."
(2) Ford Motor Co. v. Tomlinson, 6 Cir., 1956, 229 F.2d 873, 877.
"* * * the release of a tort feasor primarily liable ordinarily operates to release one secondarily liable, regardless of an attempt to reserve rights against the latter." 229 F.2d at page 877).
(3) Hillyer v. City of East Cleveland, 1951, 155 Ohio St. 552, 99 N.E.2d 772, 773.
"1. Where a person has a valid claim against an abutting property owner for actively or negligently creating and maintaining a nuisance upon a public sidewalk, and likewise has a claim against a municipality for the same nuisance under Section 3714, General Code, the two liabilities are not joint, the abutting property owner being primarily liable and the municipality secondarily so. Under such circumstances a complete settlement of the claim against the abutting owner by the claimant is a bar to an action against the municipality even though the settlement recites that the amount *62 received thereunder is not full compensation and a right is reserved to bring an action against the municipality. * * *"
(4) Terry v. Memphis Stone & Gravel Co., 6 Cir., 1955, 222 F.2d 652, 653.
"* * * Inasmuch as the liability alleged against the appellee company rested solely upon the averment that the truck driver was the servant or agent of the appellee company for whose negligence it would be responsible upon the principle of respondeat superior, a covenant not to sue the truck owner and the driverappellee's alleged agentswould necessarily release appellee. The case is clearly distinguishable from those cases in which a covenant not to sue one joint tort-feasor does not protect another joint tort-feasor from an action for damages brought against it by an injured party."
(5) Hillyer v. City of East Cleveland, 155 Ohio St. 552, 99 N.E.2d 772, 776.
"It has long been the law of this state that in a situation where a city is liable to a person for failure to keep its highways or sidewalks open, in repair and free from nuisance, under Section 3714, General Code, and an abutting owner is also liable for active negligence in creating the nuisance for which the city is liable, the owner and the city are not joint tort-feasors, but in such a case the one who actively creates the nuisance is primarily liable and the city only secondarily so. City of Zanesville v. Fannan, 53 Ohio St. 605, 42 N.E. 703, 53 Am.St.Rep. 664; Morris v. Woodburn, 57 Ohio St. 330, 48 N.E. 1097; and Bello v. City of Cleveland, 106 Ohio St. 94, 138 N.E. 526.
"It follows that under such circumstances if the city is sued and compelled to respond in damages it is subrogated to the injured party's right against the one primarily liable, i.e., the city has the claim of the one injured against the primarily liable tort-feasor. Its right is derived from the injured party and if the injured party has destroyed his right against the one primarily liable he cannot thereafter pursue the city in its capacity as a party secondarily liable because the latter has been cut off from its remedy against the one primarily liable by the action of the injured party. Herron v. City of Youngstown, supra; Bello v. City of Cleveland, supra."
This same general rule of law has been recognized in Louisiana jurisprudence. In the case of McKnight v. State, La.App., 68 So.2d 652, decided by the First Circuit Court of Appeal in 1953 and in which writs of certiorari were denied, the facts were slightly different from the present case but the rationale clearly supports the position of defendants. There the plaintiff first sued three policemen whose negligence had allegedly caused the death of plaintiff's husband. After trial on the merits, the court held that these policemen were not negligent and rendered a decision against the plaintiff. Then, after obtaining legislative authorization, the same plaintiff brought a suit against the State. Exceptions of no right or cause of action and of res judicata, were filed. The Court sustained the exception of res judicata, on the theory that the discharge of the primary obligor by final judgment of Court, necessarily discharges a secondary obligor whose liability, if any, is vicarious under the doctrine of respondeat superior. We quote at length from the opinion in the McKnight case:
"In Louisiana the doctrine of res judicata is much more restricted than at common law. (Citing case) With *63 us it is of statutory declaration, and its scope is defined and limited by the provisions of Revised Civil Code Article 2286. (Citing cases) The authority of the thing adjudged, hence, must be tested by the three requisites of that article.
"These three requisites are:
"1. The thing demanded must be the same;
"2. The demand must be founded on the same cause of action;
"3. The demand must be between the same parties, and formed by them against each other in the same quality.
"It cannot be disputed that the first two of these requisites are met here. The dispute involves the third requisite.
"Plaintiff's able and elaborate brief cites and discusses an abundance of authorities which support the pronouncement of the Supreme Court in the Durmeyer [v. Streiffer, 215 La. 585, 41 So.2d 226] Case. However, as far as I can determine, none of these authorities covers the precise question here involved; Can this plaintiff maintain an action against the State, based entirely on a charge of negligence on the part of three officers, all of whom have been judicially exonerated from any degree of actionable negligence by the Ninth Judicial District Court, with its decree affirmed by the Court of Appeal?
"A definite exception to the third requisite set forth in LSA-Civil Code Article 2286, appears to be made in the case of Muntz v. Algiers & Gretna Street R. Co., 116 La. 236, 40 So. 688. A clear and concise statement of the holding in that case is found in the annotation in 133 A.L.R. at page 193:
"`Where the liability of the lessor of a railway for injuries or death depended upon the negligence of the lessee, a judgment for the lessee in a death action was held to bar a subsequent action against the lessor company for the same death, the controversy having necessarily ended the moment that it was finally judicially determined that the lessee was not at fault.'
"In the Muntz case, the Supreme Court said: (116 La. 236, 40 So. 690)
"`The act which gave rise to the present suit was the alleged negligence and carelessness of the driver of a car belonging to the Jefferson Railway Company, in the charge and custody of one of its employees. It is not claimed or pretended that as a fact the Algiers and Gretna Railway Company had anything whatsoever to do with the operation of the road. Its liability was purely legal, a responsibility resting upon it for the act of a person other than itself. The plaintiff incautiously, and probably injudiciously, thought proper to have the issue as to whether that other person was in fact guilty of a fault tested on the merits of the case contradictorily with that person himself. Both sides (presumably to the best of their ability) supported their respective pretentions by evidence, and the district court on that evidence, and for no reason or ground personal to the defendant, held the defendant to be blameless. As the liability of the Algiers and Gretna Railway Company was essentially and entirely dependent upon damage having resulted to plaintiff or his child, or to himself, from a fault of the Jefferson Company, the moment it was finally judicially determined that that company was not at fault, the controversy necessarily ended.'

"Although this decision was handed down nearly forty-seven years ago, it does not appear that it has ever *64 been cited by any of our higher courts, with the possible exception of a case in 10 Ct.App. 241, referred in Sheppard's Citations. I have not seen that case.

"The Muntz decision is consonant with reason and common sense. It appears to make a definite exception to the third requisite set forth in LSA-Civil Code Article 2286. The principle enunciated there is, in my opinion, clearly applicable to the instant case and decisive of the question here involved.
"For these reasons the exception or plea of res judicata is maintained and plaintiff's suit is dismissed at her cost. Judgment will be signed accordingly." (68 So.2d at page 655 and page 656)
It is true that in the McKnight case and the cases cited therein, the discharge of the primary obligor was by judgment of Court whereas in the present case, the discharge of the primary obligor was by a written instrument of release containing an agreement to indemnify and hold harmless, but this does not prevent the McKnight case and the cases cited therein from being direct authority here. The LSA-Civil Code specifically provides in Article 3078, "Transactions have, between the interested parties, a force equal to the authority of things adjudged. * * *" In the case of Jackson v. United States Fidelity & Guaranty Company, La.App., 199 So. 419, 421, the Second Circuit Court of Appeal held as follows:
"A compromise agreement, * * * is intended to have the binding effect of the thing adjudged. The law has ordained that such transactions have the dignity and force of a definitive judgment. * * * It is simply the act of the parties determining their own liabilities and obligations, instead of the court."
Other Louisiana cases to the same effect are Cassidy v. Joseph, 204 La. 664, 16 So.2d 225, and Gregory v. Central Coal & Coke Corporation, 197 La. 95, 200 So. 832.
It is therefore indisputable that an act of compromise and release is equivalent to a definitive judgment of court discharging the primary obligor and the McKnight case and the cases cited therein hold that a judgment of Court discharging the primary obligor, necessarily and automatically renders the matter res judicata insofar as a later claim against the vicariously liable party is concerned. It is our opinion that the exception of res judicata as well as the exception of no cause of action were properly sustained.
For the reasons hereinabove set forth, the judgment appealed from is affirmed.