LOTTINGER, Judge.
On February 4, 1959 the plaintiff, Lester D. Hornsby, filed suit against the Travelers Indemnity Company (hereinafter sometime referred to as “Travelers”), liability insurer of Alex Jenkins and the American Automobile Insurance Company (hereinafter sometime referred to as “American”), liability insurer of Milton Williams, for damages for personal injuries and property damage incurred in an accident which occurred on February 6, 1958, and which was alleged to have been caused by the negligence of the employees of the two defendants’ insureds.
Travelers filed a Plea of Estoppel, Exception of Res Judicata and an Exception of No Right and No Cause of Action. The basis of the plea and exceptions is set forth in the following factual allegations contained in the Exception of No Right and Cause of Action as follows:
“1.
“On or about November 20, 1958, this defendant, The Travelers Indemnity Company, tendered to the plaintiff, Lester D. Hórnsby, a draft payable to Lester Hornsby and Motors Insurance Corp. in the amount of Five Hundred Fourteen and 47/100 Dollars ($514.47) in settlement of any and all claims arising out of the accident occurring on or about February 6, 1958, near Baton Rouge, Louisiana, on which the instant suit is based."
*281 “2.
“The payees of said draft, including Lester D. Hornsby, endorsed, cashed and received the proceeds from the above mentioned draft, as evidenced by a photostatic copy of said draft attached to this defendant’s plea of es-toppel, which copy is made a part hereof by reference.
“3.
“By receiving, endorsing and cashing said draft, the plaintiff, Lester D. Hornsby, finally and absolutely compromised and settled all claims that he may have had against this defendant herein, arising out of said accident.
“4.
“A single right or cause of action in tort arises out of a single accident between any two parties thereto, and a single right or cause of action cannot be divided so that settlement of all or any portion of this right or cause of action serves to extinguish any and all rights the parties thereto may have had from such accident.
“5.
“By settlement and compromise of all or any portion of a claim against this defendant herein, no further right or cause of action arising out of above mentioned accident exists; therefore, exceptors specially plead the exceptions of no right and no cause of action.”
An Exception of No Right and No Cause of Action was filed by American based on the same factual allegations and legal conclusions as set forth by Travelers as quoted above.
Subsequent to the filing of the aforesaid pleadings the plaintiff filed a supplemental and amended petition wherein the following allegations were made:
“1.
“Your petitioner desires to supplement and amend his petition by showing that the Motors Insurance Corporation settled directly with Travelers Indemnity Company of Hartford, Connecticut, under its subrogation agreement for the damages to his car, and that he desires to eliminate from his demand the amount of the settlement of $514.47.
“2.
“Your petitioner would further show that the Motors Insurance Corporation settled directly with Travelers Indemnity Company the loss that it paid under the coverage of a Collision Policy, and under subrogation from petitioner, recovered the sum back; that on or about November 21, 1958, plaintiff received the following letter from Motors Insurance Corporation:
“ ‘Motors Insurance Corporation General Exchange Insurance Corporation
“ T417 Tulane Ave.
“‘New Orleans, La.
“ ‘November 21, 1958
“ ‘Mr. Lester Hornsby
“ ‘Greensburg, Louisiana
“‘Your Share: $50.00
“‘Amount of Draft: $514.47
“‘Dear Sir:
“ ‘Enclosed is a draft made payable to you and this Company representing the settlement made for the damages to your car.
“ ‘Please endorse this draft in ink on the reverse side exactly as your name appears on the face, and return it to us in the enclosed self-addressed envelope.
“ ‘A check for your proportionate share will be mailed to you immediately after you return this draft to us properly endorsed.
“ ‘Very truly yours,
“ ‘E. F. Schellhaas, Jr.
“ ‘New Orleans Branch
“ ‘EFS :ylc
“ ‘Enel.’
*282 “3.
“The loss agreement to Motors Insurance Corporation provided for and was restricted just to car damages under its policy.
“Loss or Damage Agreement
“The undersigned hereby expressly agrees that the total loss or damage, occurring on or about the_6_ day of February 1958 for which claim is made, as set forth in the undersigned’s signed Statement of Loss, dated February 7 1958, to automobile covered by Policy No. 29-71264 of the Motors Insurance Corporation, is for repairs and/or replacements by Peterson Chev. Co. less my $50.00 deductible, by Policy No._ of the General Exchange Insurance Corporation, is_
“The sole purpose of this instrument is to fix and evidence the total amount for which claim is made. This instrument is, and is intended, to be binding as to the total amount of loss or damage said to have occurred under the policy of the Corporation indicated above, hereinafter referred to as the ‘Corporation’. This instrument is not an acceptance of liability by the Corporation, does not commit the Corporation to payment of said claim and does not in any sense waive any of the conditions or provisions of the policy of said Corporation.
“Furthermore, upon, in the event, and in consideration of the payment of the above amount by the Corporation, the undersigned hereby agrees to release and discharge the Corporation from any and all liability under its Policy for said loss and/or damage, and the undersigned further agrees to hold the corporation, its successors or assigns, free and harmless from further claim for the loss described.
“Upon, in the event, and in further consideration of the payment of the above amount by the Corporation, the itndersigned hereby agrees that the said Corporation shall be vested with all rights and causes of action the said undersigned has against any person, persons, or Corporation whomsoever for damages to the insured property, and the undersigned agrees to execute any documents required by said Corporation in the prosecution of said rights, and the Corporation is hereby authorized and empowered to sue, compromise or settle in the undersigned’s name or otherwise.
“I understand car must be returned to Peterson Chev. Co. for handling or any complaint on repairs. I understand above settlement is subject to confirmation of coverage.
“In Witness Whereof the undersigned has hereunto executed this instrument and set his hand and seal this 7 day of February 1958 Insured /s/ Lester Hornsby”.
In addition to the above it was alleged that the sole intent of the settlement was to recover damages to the automobile, and that if anything to the contrary was inserted by his collision insurer, Motors Insurance Corporation (hereinafter sometime referred to as “Motors”) and Travelers it was the result of mistake, fraud and error. Motors was joined as a party defendant and judgment was prayed for against it, Travelers and American, in solido, in the original amount less the sum of $514.47 paid for the damages to the automobile.
To both petitions Motors filed a Plea of Improper Cumulation of Actions together with Exceptions of Misjoinder of Parties Defendant, Prematurity, Vagueness, and No Right and No Cause of Action. Travelers filed Exceptions of Vagueness and No Right and No Cause of Action as to the amended petition.
The Exception of Improper Cumulation of Actions filed by Motors was sustained by *283 the trial Court and plaintiff’s suit dismissed as to it. The Exception of Vagueness filed by Travelers was overruled but its Exception of No Cause of Action and that of American were sustained and the suit dismissed as to them.
The plaintiff has appealed from the judgments dismissing his suit. American has answered, praying that the judgment appealed from be amended so as to sustain also its Exception of No Right of Action. Travelers has likewise answered the appeal praying that the judgment be amended so as to sustain its Exceptions of No Right of Action, Res Judicata and Vagueness and its Plea of Estoppel. Motors has also answered the appeal reurging its exceptions and praying that all of them be sustained.
As is admitted by counsel for Travelers in his brief, the essential facts are not disputed. They may be fairly stated as follows:
The accident occurred on February 6, 1958. Hornsby filed a claim with his collision insurer, Motors, for the damages to his automobile and on February 14, 1958, Motors paid the amount of $464.47 which represented the amount of the loss less the $50 deductible as provided in the policy. Thereafter, Motors filed a claim against Travelers with the Baton Rouge Arbitration Committee (which comes from a nationwide inter-company arbitration agreement) seeking recovery of the amount it had paid Hornsby. No appearance or claim was made whatever by the latter, nor was any claim made on his behalf for the $50 deductible. The matter was heard before the Arbitration Committee on October 28, 1958, and on November 25, 1958, a decision was rendered in favor of Motors and against Travelers in the amount claimed, namely $464.47.
On November 20, 1958, Travelers issued its draft to the order of Hornsby and Motors in the amount of $514.47 containing the language “In full settlement of all claims of the payee”. The draft was then forwarded by Motors to Hornsby with the request that he endorse and return it in order that a check could then be sent him for his share which, of course, was $50. •Hornsby did endorse the draft and, apparently, received the amount of $50 from Motors with the latter retaining the balance which was due them.
The real defense urged by the defendants Travelers and American, regardless of what the various pleas or exceptions filed by them might be termed, is that Hornsby, by endorsing Traveler’s draft, compromised and settled all claims that he had against either of these defendants arising out of the accident. Cited in support of this proposition are the cases of Williams v. Marionneaux, La.App., 116 So.2d 57, affirmed in part, 240 La. 713, 124 So.2d 919; Thompson v. Kivett & Reel, La.App., 25 So.2d 124, and others which hold that one accident gives rise to but one cause of action and that the cause of action cannot be split.
We are in accord with the holdings and views expressed in the cited authorities but they are not applicable to the facts presented by this litigation. The occurrence of the accident created a cause of action in favor of the plaintiff against the alleged tort-feasors and/or their insurers; likewise, upon the payment to plaintiff by Motors of the amount due under its collision policy, another and distinct cause of action arose in favor of the latter, under well settled principles of law, against the alleged tort-feasors and/or their liability insurers. It is this latter cause of action which was being asserted by Motors when it applied to the Arbitration Committee; it was that cause of action that was passed upon by the committee and it was primarily in settlement of that cause of action that Travelers issued the draft in question.
But, argues counsel for Travelers, Hornsby had a cause of action against Travelers for the recovery of the $50 deductible and when he endorsed the draft, *284 worded such as it was, he compromised all his rights, whether for personal injuries or property damage and if there was error on his part it was error of law and hence would not vitiate the settlement. Such a position is untenable.
LSA-C.C. art. 3071 states that a compromise is a contract which must be reduced to writing, and, while there is no rule of law which prescribes any particular form with which it should be clothed, it is hornbook law that to be a valid contract in the first place there must be a mutuality of intent and consent to contract. There is not a shred of evidence in this record to indicate that Hornsby, by signing the draft, ever intended to compromise or settle his claim against Travelers in any way. He had been paid the amount due him by his collision insurer and was under an obligation to assist them in the recovery of the money expended by them. This he did and the fact that, incidentally, in so doing he also recovered the $50 deductible we hold to be of no moment.
Why Travelers handled the matter in the way in which it did we have no way of knowing. If it was customary to include the $50 deductible[1] after having been adjudged liable by the Committee then that alone would not be intent on the part of Travelers to enter into a contract of compromise. Or, on the other hand, if the inclusion of the $50 in the amount of the draft and the insertion of plaintiff’s name thereon was an artifice to effect a compromise, it is a subterfuge which could never be condoned or upheld.
It is our conclusion, therefore, that the settlement effected by the endorsing of the draft of Travelers by plaintiff and Motors was of that cause of action which Motors had against Travelers and nothing more; consequently the plaintiff’s cause of action arising out of the accident is still extant.
For the reasons assigned:
It is ordered, adjudged and decreed that the Exceptions and Pleas filed by Motors Insurance Corporation be and they are hereby sustained and plaintiff’s suit dismissed as to it.
It is further ordered, adjudged and decreed that all exceptions and pleas filed by Travelers Indemnity Company and The American Automobile Insurance Company be and they are hereby overruled and the matter is remanded to the Lower Court for trial on the merits.
Affirmed in part, reversed in part.
HERGET, J., recused.

. As pointed out hereinabove, that amount was never claimed by anyone; however the application did reveal that $50 was the deductible amount under the policy.