MILLER, Judge.
Defendant Harold Davenport appeals a judgment ordering a redistribution of corporate profits according to a contract made by defendant and plaintiffs Sidney Naquin and Gene Davenport.[1] We affirm.
Gene Davenport (no relation to defendant) and Sidney Naquin had been employed by defendant Harold Davenport or one of his corporate enterprises since 1955. In September 1965 defendant organized and purchased all the stock of Oilwell Drilling Control, Inc. Both plaintiffs were employed full time by ODC, Inc. on a salary basis. In 1967 each plaintiff purchased 15% of the stock in ODC, Inc. from- defendant. - Thus the stock ownership in ODC, Inc. from 1967 until May 9, 1969 was 70% to Harold Davenport, 15% to Sidney Naquin, and 15% to Gene Davenport.
In March of 1968 plaintiffs notified Harold Davenport that they were leaving ODC, Inc. and that both had obtained jobs with competing firms. In order to induce plaintiffs to remain as employees of ODC, Inc. the parties negotiated, the contract which is the subject of this dispute. The following contract was dictated by Harold Davenport without the assistance of either legal counsel or counsel of a Certified Public Accountant.
Oilwell Drilling Control
P. 0. Box 52042
Lafayette, Louisiana 70505
Phone 232-7493
April 1, 1968
AGREEMENT
Harold Davenport Sid Naquin Gene Davenport
It Is understood between the above named that 011-well Drilling Control, Inc. shall reach and maintain a cash working capital of $25,000.00. It is further agreed that all cash proceeds in excess of the stated $25,000.00 shall be shared equally between Harold Davenport, Sid Naquin, and Gene Davenport. This agreement shall remain In effect as long as all three parties remain actively engaged In the business of Oilwell Drilling Control, Inc.
/s/ Harold Davenport
.Harold Davenport
/s/ Sidney J. Naquin
Sid Naquin
/s/ Gene Davenport
Gene Davenport
Plaintiffs continued to work for ODC, Inc. and during the time that followed Harold Davenport made the following distributions.
Harold Davenport Sid Gene Naquin Davenport
April 9, 1968 $ 2,100 $ 450 $ 450
Feb. 3, 1969 4,900 1,050 1,050
Feb. 6, 1969 14,000 3,000 3,000
March 12, 1969 14,000 3,000 3,000
35,000 7,500 7,500
The distributions were Harold Davenport’s “idea” and were not discussed with the ODC, Inc. board of directors, stockholders or with plaintiffs. When plaintiffs first learned that the distributions were not equal, they immediately complained and started negotiations to sever their connec *222 tion with ODC, Inc.' The parties negotiated terms to either buy or sell the ODC, Inc. stock and on May 9, 1969 plaintiffs sold their stock to Harold Davenport. All parties signed the minutes of the stockholder’s officer’s and director's meeting which concluded with this statement:
Mr. Eugene Davenport and Mr. Sidney Naquin stated that in view of the transfer of all of their interest in the company, they would resign their positions as officers and Directors.
The trial court held that Harold Davenport’s distributions (summarized above) violated the April 1, 1968 contract and that each plaintiff was entitled to judgment against Harold Davenport personally for $9,166.66 (the difference between the $7,-500 distributed to each plaintiff and the $16,666.66 due under the April 1, 1968 agreement).
Defendant Harold Davenport contends that the May 9, 1969 stock transfer (and specifically the statement that they transferred "... all of their interest in the company . . . . ”) was a cancellation (or compromise) of plaintiff’s claim to the disputed profits. Alternatively, it is contended that the triggering or activating minimum standard (ODC, Inc. shall reach and maintain a cash working capital of $25,-000) of the 1968 agreement was never met. Therefore the 1968 agreement did not control the distribution of profits.
Both contentions were considered and rejected by the trial court in a carefully considered written opinion, which we in effect adopt as our own.
There was no evidence introduced to suggest that on May 9, 1969, the parties discussed plaintiffs’ outstanding claim for their share of the cash distributions made subsequent to the April 1, 1968 agreement. The May 9, 1969 minutes do not mention the claim or refer to a compromise. The minutes discuss the sale of stock and do not fulfill the statutory and jurisprudential requirements for a compromise of the claim under the April 1, 1968 agreement. See LSA-C.C. Art. 3071; Hornsby v. Travelers Indemn. Co. of Hartford, Conn., 128 So.2d 280 (La.App. 1 Cir. 1961); Trask v. Lewis, 258 So.2d 603 at 605 (La. App. 1 Cir. 1972).
Defendant appellant contends that plaintiffs each received $9,750 more for their 15% of ODC, Inc.’s stock than they paid for it, and that there was no showing that the stock appreciated that much during the 13 months that they owned it. It is contended that this establishes that the price paid for the stock included a cancellation of the outstanding claim. , This argument is rejected. The evidence supports a finding that the stock was purchased at a bargain price in order to keep the two longtime employees interested in the company and to give them some security. On the other hand, the May 1969 sale price was negotiated on a buy or sell basis. Had plaintiffs decided to buy rather than sell, they would have had to pay defendant the same price per share which he paid.
The alternative contention (that7 the conditions of the April 1968 agreement were never met) is also rejected. Three Certified Public Accountants testified and agreed that the term “cash working capital” is at best difficult to interpret. All agreed that according to the ODC, Inc. books, there never was a time when the corporation had cash on hand which exceeded current liabilities by $25,000. On the other hand current assets exceeded current liabilities by more than $25,000 during a substantial part of the time from April 1, 1968 until May 9, 1969,. and specifically during February and March 1969 when the bulk of the distributions were made.
During the period in question Harold Davenport purchased substantial fixed as *223 sets by spending cash or incurring current liabilities. Pretermitting the question of whether or not Harold Davenport as president of ODC, Inc. needed a resolution of the board of directors to purchase these fixed assets, it was established that plaintiffs did not participate in or have knowledge of these purchases.
At one time Harold Davenport suggested that the April 1, 1968 agreement was terminated a day or two after it was executed, and that at that time Harold stated to plaintiffs that the agreement was unworkable because he could manage the corporate affairs so that the minimum standards required by the agreement would never be met. Harold Davenport has not argued to us (and apparently did not argue to the trial court) that the April 1, 1968 agreement was terminated.
Considering the problem relating to definition of the term “cash working capital” and the fact that current assets exceeded current liabilities by more than $25,000 for a substantial period of time and specifically during the time when the cash distributions were made, we find no manifest error in the trial court’s determination that Harold Davenport is bound by his own interpretation of the corporation’s condition. The distribution of corporate profits was decided on by Harold Davenport and by him alone. He alone drafted the April 1, 1968 agreement.
 In a doubtful case, the agreement is interpreted against him who has contracted the obligation. LSA-C.C. Art. 1957. When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation. LSA-C.C. Art. 1956.
The trial court judgment is affirmed at appellants’ costs.
Affirmed.

. The judgment dismissing the suit against Oilwell Drilling Control, Inc. has become final.